JOHN J. O'KEEFE vs. THE NATIONAL FOLDING BOX AND
PAPER COMPANY.

Third Judicial District, New Haven, January Term, 1895. ANDREWS, C. J.,
TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

A complaint alleged that the plaintiff, who was nineteen years old and
employed. by the defendant, a paper box manufacturer, was directed
temporarily to leave his usual empoyment, and to put colored paper
saturated with poison into a heated steam chest, and take it out again;
that such steaming of the paper was not customary or usual; that the
vaporization of the poison caused it to enter the plaintiff's system,
whereby he was greatly injured; and that the defendant "knew or
ought to have known" the injurious effect that would result from the
doing of such work.   Held, on demurrer, that the complaint was in-
sufficient, because it did not state any facts which made it the duty of
the defendant to know that the paper was poisonous, or which showed
his means of knowledge of that fact to be superior to those of the plain-
tiff.
An employer does not warrant the goodness of the materials which he puts
into the hands of his servants.  He is not bound to anything more, in
this respect, than the exercise of reasonable care, in view of their par-
ticular kind and condition, and the uses to which they are to be ap-
plied.

[Argued January 18th—decided February 8th, 1895.]

ACTION to recover damages for personal injuries sustained
by the plaintiff through the alleged negligence of the de-
fendant; brought to the Superior Court in New Haven
County and tried to the court, George W. Wheeler, J., upon
defendant's demurrer to the complaint; the court sustained
the demurrer, adjudged the complaint insufficient, and the
plaintiff appealed.  No error.

The complaint was as follows :

"1. On April 7th, 1893, the defendant corporation was,
and for many years last past has been, engaged in the mak-
ing and manufacture of paper boxes.

" 2. On April 7th, 1893, said John J. O'Keefe was in the
employ of the defendant as a laborer at their request, to wit :

was engaged and employed to feed a certain press with paper or pasteboard, for the purpose of its being folded into divers and sundry shapes, and ultimately into paper boxes.

"3. On said day the plaintiff was directed by the defendant to temporarily leave the employment for which and in which he was engaged and employed, and was carelessly and negligently put to work in placing colored paper saturated with poison into a box greatly heated with steam, and then taking said paper out again for the purpose of its being more easily folded.

"4. The steam and heat from said box and in said box caused the poison in said paper to issue out, and created a great steam which was filled with said poison from said paper, and which the plaintiff was compelled to breathe and inhale into his lungs and mouth whilst performing said work for the plaintiff.

"5. On account of the heat from said box the plaintiff was obliged to endure great heat, and thereby perspired very freely, and on account of said steam heat the poison on and in said paper which he was compelled to handle in doing said work settled in and on his lungs, upon his face, lungs, hands, body and limbs, and so became covered with said poisonous substance, and became therewith absorbed.

"6. The plaintiff without any knowledge that said paper contained said poison, or of the effects said poison would have upon him, was carelessly and negligently kept by the defendant at said work in the nature aforesaid from April 7th, 1893, at 10:30 o'clock in the forenoon, all of said day, and on the 8th of April, 1893, and on the 10th of April, 1893, until the noon of said day last mentioned, continuously.

"7. The placing of colored paper in a box greatly heated by steam, and then taking said paper out again in the manner and form before described, was not customary or usual in the making and manufacture of said paper boxes in said manufacturing establishment of the defendant, and the defendant knew, or ought to have known, the effect and result the placing of colored paper into a box greatly heated by steam, and then taking it out again, would have, or might

have upon the person employed in such work, to wit, the plaintiff.

"8. The plaintiff knew nothing of the poisonous nature of the paper he was so compelled to handle, nor of the effect of placing said paper in said box and taking it out again, as above described, and the defendant failed to give the plaintiff notice of the poisonous nature of said paper, or of the effect of said employment that the plaintiff was continuously compelled to handle in doing said work, and the danger that might result to his health from continuously prosecuting said work.

"9. On the day last aforesaid the plaintiff began to feel a nausea, and did suffer great pain, and became greatly depressed from the effects of said poisonous substance he was so compelled to handle and breathe by the carelessness and negligence of the defendant, and in consequence of said work so performed by the plaintiff through the carelessness and negligence of the defendant the plaintiff's whole body became saturated with said poison, and his head, body and limbs swollen, and his sight nearly extinct, and his life dispaired of, and thereby was and still is suffering great pain, and his health and strength are destroyed for life.

"10. At the time the plaintiff entered into the said employment of the defendant he was nineteen years of age, and was of sound body and well, and was earning one dollar a day.

"11. By reason of the said carelessness and negligence of the defendant the plaintiff has suffered the above grievances, and has expended large sums of money for medical attendance, for nursing, and has suffered other such damage, all of the amount of five hundred ($500) dollars.

"12. All of the above grievances the plaintiff has suffered through the carelessness and negligence of the defendant, and will continue to suffer to the end of his life."

The defendant demurred to the complaint on the following grounds: "1. The acts constituting carelessness and negligence are not set out in the complaint. 2. The complaint does not allege that the defendant had knowledge or

notice of any kind of the alleged poisonous nature of the paper upon which the plaintiff was put to work by the defendant. 3. The complaint does not allege that the plaintiff did not have equal means with the defendant of knowing of the alleged poisonous nature of said paper."

Judgment was given in favor of the defendant upon this demurrer, and the plaintiff appealed.

*Jacob P. Goodhart,* for the appellant (plaintiff).

I. Among the implied obligations resting upon the master is the duty to provide suitable means and appliances to enable the servant to do his work. *Stephenson* v. *Duncan,* 73 Wis., 406; *Ford* v. *Fitchburg R. R. Co.,* 110 Mass., 240; *Holden* v. *Fitchburg R. R. Co.,* 129 id., 268; *Hough* v. *Railway Co.,* 100 U. S., 213; *Kain* v. *Smith,* 89 N. Y., 376; *Fuller* v. *Jewett,* 80 id., 46; *King* v. *Railway Co.,* 72 id., 607; *McEligott, Admr.,* v. *Randolph,* 61 Conn., 157; *Wilson* v. *Willimantic Linen Co.,* 50 id., 433; 14 Am. and Eng. Ency. of Law, page 892, and cases cited; *Cayzer* v. *Taylor,* 10 Gray, 274; *Seaver* v. *Boston & Maine R. R.,* 14 id., 466; *Snow* v. *Housatonic R. R. Co.,* 8 Allen, 441.

II. A master who sets a minor servant at a more dangerous class of work than that for which his services were originally engaged, makes himself liable for the injury sustained by the minor in doing said work, if under all the circumstances setting him at such work was a negligent act on the part of the master; and the master would be much more strictly held to an intelligent discretion in this regard, toward such persons, than toward adults. *Anderson* v. *Morrison,* 22 Minn., 274; *Lewis* v. *McAffe,* 32 Georgia, 405; 14 Am. & Eng. Ency. of Law, 899; *Chicago R. R. Co.* v. *Harny,* 28 Ind., 28; *Union Pacific R. R.* v. *Fort,* 17 Wallace, 553; *Smith* v. *Peninsular,* 60 Mich., 501; *Colburt* v. *Rankin,* 22 Cal., 197; *Coombs* v. *New Bedford Cordage Co.,* 102 Mass, 572; *Maloney* v. *Haley,* 6 Cal., 108; *Snow* v. *Housatonic R. R. Co.,* 8 Allen, 441; *Lanning* v. *N. Y. R. R. Co.,* 49 N. Y., 521; *Gadly* v. *Hagerdy,* 20 Penn. State, 387; *Haley* v. *Case,* 142 Mass., 316;

*Atlas Engine* v. *Randolph*, 100 Ind., 293; *Pittsburg Elc. R. Co.* v. *Adams*, 105 id., 151.

III. If there are any dangers, either latent or patent, of which the master has knowledge, either actual or presumed, which the employee, either from his youth, inexperience, want of skill or other causes, does not and is presumed not to understand or comprehend, they must be made known to him by the master, and it is the duty of the master so to do. Bailey on Master's Liability to Servants, page 111; *Sullivan* v. *Manuf'g Co.*, 113 Mass., 397; *Spelman* v. *Fisher Iron Co.*, 56 Barb., 151; 14 Am. and Eng. Ency. Law, 843, 897; *Atkins* v. *Merrick Thread Co.*, 142 Mass., 431; *McGowan* v. *La Plata M. & S. Co.*, 9 Fed. Rep., 861; *Jones* v. *Florence Min. Co.*, 66 Wis., 268; *Parkhurst* v. *Johnson*, 50 Mich., 70; *Smith* v. *Car Works*, 60 id., 501; *Perry* v. *March*, 25 Ala., 659.

IV. Negligence in a master may and often does consist in failing to know as well as failing to do, and such is always the case when it is his duty to inform himself and know. *Hewitt* v. *Railroad*, 67 Mich., 62. *Haley* v. *Case*, 142 Mass., 316. Where plaintiff's right of action depends upon the ignorance of certain latent conditions, the complaint need not aver such ignorance, but in order to escape liability, defendant must aver and prove knowledge on plaintiff's part. The servant has a right to assume that the machinery and implements furnished him by his master are safe and suitable for the business engaged in. *Nowd* v. *Mississippi R. Co.*, 50 Miss., 178; *Speed* v. *Atlantic Elec. R. Co.*, 71 id., 303; *Fort Wayne Elec. R. Co.* v. *Gildercleave*, 33 Mich., 133; *Cone* v. *Delaware Elec. R. Co.*, 81 N. Y., 206; *Bradbury* v. *Goodwin*, 188 Ind., 286. The burden of proving that an injured servant had knowledge of an obstruction or defect, before an accident, is on the employer. 14 Am. & Eng. Ency. of Law, 844. Where a servant is injured while temporarily engaged in more hazardous work than that for which he was employed, the question of negligence must depend on the facts and circumstances of each particular case. *Pittsburg R. R. Co.* v. *Adams*, 105 Indiana, 151; *Warmell* v.

*Maine Central R. R. Co.*, 79 Me., 597 ; *Russell* v. *Tilidson*, 140 Mass., 201 ; *Union Pacific R. R. Co.* v. *Fort*, 17 Wallace, 554.

*James T. Moran*, for the appellee (defendant).

I. The complaint is defective because there is no direct allegation that the defendant *knew* that the paper contained poison ; and, in the absence of the allegation of positive knowledge, facts are not alleged which show that the defendant *ought to have known* that the paper contained poison.

II. The servant, in order to recover for defects in the appliances of the business, is called upon to establish three propositions:—1. That the appliance was defective. 2. That the master had notice thereof, or knowledge, or ought to have had. 3. That the servant did not know of the defect and had not equal means of knowing with the master. *Pennsylvania Co.* v. *Congdon*, 134 Ind., 226 ; *Griffiths* v. *London & St. K. Docks Co.*, 13 L. R. Q. B. Div., 259 ; *Nason* v. *West*, 78 Me., 253 ; Beach on Contributory Negligence, § 123 ; Shearman and Redfield on Negligence, § 99 ; *Wormell* v. *Maine Central Railroad Co.*, 79 Me., 397 ; *Cole* v. *Chicago Railroad Co.*, 7 Wisc., 114 ; *Davies* v. *England*, 10 Jurist, N. S., 1235. The law of Connecticut, on this branch of the subject of master and servant, is in direct accord with the law as laid down by the courts of England and the United States. *Hayden* v. *Smithville Mfg. Co.*, 29 Conn., 548.

A careful review of the facts and opinion in the case of *Wilson* v. *Willimantic Linen Co.*, 50 Conn., 433, shows that the court regarded the *knowledge* of the defendant, through its superintendent, that the countershaft, which fell and injured the plaintiff, " was left in an unsafe and dangerous condition to be used," as the essential proof of negligence. Pages 464, 465.

BALDWIN, J. The complaint alleges that the plaintiff, who was but nineteen years old, while in the employment of the defendant as a feeder of a folding press, supplying it with paper or pasteboard, was directed temporarily to leave that

employment, and was negligently put to work in placing colored paper, saturated with poison, into a box greatly heated with steam, and then taking it out again, when softened, for more easy folding; that he did not know the paper was poisoned, or of the effect upon his health that his so handling it would have; that the steam and heat of the box caused the poison to exhale and mingle with the steam, which poisoned steam the plaintiff was compelled to breathe, while at the work; that the heat also caused him to perspire very freely, and the poison on and in the paper which he was compelled to handle worked into his whole body, and became absorbed into his system; that such a mode of treating colored paper in a heated box was not customary or usual in the business of the defendant, and the defendant knew or ought to have known the effect it might have on the plaintiff; that he knew nothing of the poisonous nature of the paper, nor of its natural effect when so treated, and the defendant gave him no notice of its poisonous nature, or of the dangerous effects that might result from the work; that the defendant negligently kept him at the work continuously, on each day, from 10.30 A. M. on April 7th to noon on April 10th; that on April 10th he began to feel the effects of the poison; and that, in consequence of the work he thus did, through the negligence of the defendant, his body became saturated with poison, and swollen, his sight nearly extinct, and his health destroyed for life.

The repeated charges of negligence thus made, are of no avail unless supported by averments of facts sufficient to show in what manner the defendant failed to perform its obligations to the plaintiff. He had been employed to feed a folding press. The defendant determined to soften some colored paper, which could not easily be folded, by putting it in a heated steam box. This was not a customary or usual process in its factory. The paper in question was saturated with poison. How this occurred is not alleged. It may have been the result of some accident, after the paper was made; it may have been due to the process of manufacture, or the materials employed. The plaintiff did not know that

the paper was poisoned, and he does not allege that the defendant knew of it. The court may properly take judicial notice that some colored paper is dyed with poisonous substances; but it is equally bound to take judicial notice that this is not true of all colored paper.

The injury to the plaintiff was due solely to the presence of the poison in the paper. He does not allege, and the court cannot assume that there is any danger to health from softening colored paper which is not poisoned, in a steam box.

A master owes his servant the duty of exercising reasonable care to provide him with a reasonably safe place in which to work, and reasonably safe appliances and instrumentalities with which to work. *McElligott* v. *Randolph*, 61 Conn., 157. If he employs him in what he knows or ought to know to be a dangerous kind of business, or furnishes him with materials to work on, which he knows or ought to know to be of a dangerous nature, it is his duty to notify him of the danger to which he is exposed, unless this is equally within the knowledge of each. Any violation of these duties, if intentional, is a willful wrong; if unintentional, it is actionable negligence. *Farrell* v. *Waterbury Horse Railroad Co.*, 60 Conn., 239, 246.

The plaintiff alleges that the defendant knew, or ought to have known, the effect that steaming colored paper in a hot box would or might have on the health of those who conducted the process. This (construed as it must be most strongly against the pleader) amounts simply to a charge that the defendant ought to have known the effect the work might have on those engaged in it. But it is nowhere alleged that, in fact, it was a dangerous process. The danger came from the use either of an improper and unsafe kind of colored paper, or of a proper kind of colored paper in an improper and unsafe condition. If the defendant failed in duty, it was in not notifying the plaintiff of the character of this paper, and the effect which might result from using it in this way. The omission of any such notice is charged, and here is the turning point in the case.

Was the defendant, though in fact ignorant of the presence

of the poison, bound to know of it? If so, it was bound to notify the plaintiff of it, unless he had equal means of knowledge.

The defendant had been for years a manufacturer of paper boxes; but steaming colored paper, in the manner followed in this instance, was not customary or usual in its establishment. In adopting this method of softening it, the defendant was, however, bound to anticipate the natural effects of heat and steam, on such a substance as colored paper. Had the paper which it supplied to the plaintiff had, to an experienced eye, any appearance of being poisoned, it would have been the defendant's duty to warn him of the risk he was assuming; for the volatilization of poison by the action of steam is a matter of common knowledge. But it is not alleged either that it wore any such appearance, or was of a kind in the manufacture of which poison is commonly used, or that the defendant had neglected to submit it to proper inspection or examination. Before the paper was put into the steam box, it was presumably seen by the defendant's proper representatives, and it was certainly seen by the plaintiff. He was nineteen years old, and had been earning almost a man's wages. So far as appears, his means of determining whether the paper was poisoned were as good as the defendant's. If it were not so, the complaint should have stated the facts which made the difference. *Hayden* v. *Smithville Manufacturing Co.*, 29 Conn., 548; *Seymour* v. *Maddox*, 20 L. J. Rep. (N. S.), Q. B., 327, 5 Eng. Law & Eq., 265; *Bailey* v. *Bussing*, 29 Conn., 1, 6; *Griffiths* v. *London & St. K. Docks Co.*, L. R., 13 Q. B. Div., 259.

The work of softening paper, so that it may be more readily folded by a press, is one properly incidental to that of feeding the press. The risk, therefore, which the plaintiff encountered in steaming the colored paper was fully within the scope of his contract of service. Not being naturally dangerous, and such dangers as there proved to be being of a kind as obvious to the senses of a boy as to those of a man, the mere fact of infancy is of no importance. An employer does not warrant the goodness of the materials which he

puts in the hands of his servants, whether they are of tender age or of full age. He is not absolutely bound, under all circumstances, to know whether they are good or bad, safe or unsafe. He is not bound to anything more, in this respect, than the exercise of reasonable care, in view of their particular kind and condition, and the uses to which they are to be applied. There is nothing in the complaint to show any want of such care on the part of the defendant or of any of its agents. No neglect of duty is charged in such a manner as to withstand a demurrer, either with respect to purchasing or providing unsuitable paper, or in not inspecting its condition, or testing its quality.

There is no error in the judgment of the Superior Court.

In this opinion the other judges concurred.