JOSEPH SIMEOLI *vs.* THE DERBY RUBBER COMPANY.

Third Judicial District, Bridgeport, October Term, 1908.
BALDWIN, C. J., HALL, PRENTICE, THAYER and REED, Js.

Proof of acts of negligence in addition to those alleged in the complaint, will not defeat a plaintiff's right of recovery, especially if such acts are established without objection.

In an action of negligence the complaint need not state the precise words of an order or command alleged as one cause of the plaintiff's injury. A general statement that the plaintiff was directed to work on a certain machine, and was ordered "to hurry and feed (the machine) faster," is sufficient, upon a hearing in damages after a default.

A direct averment that the plaintiff's injury was due to the defendant's negligence, necessarily implies that the plaintiff was in the exercise of due care, and therefore dispenses with a separate allegation to that effect.

An averment that the plaintiff did not know or have equal means of knowing of the defective and unsafe conditions described in the complaint, is not essential if that fact sufficiently appears from the other allegations of the complaint.

Whether a defendant sued for negligence can avail himself, in a hearing in damages after a default, of a written release from all liability, *quære*. If he can, the plaintiff is not required to plead the invalidity of the release, but may show the circumstances under which it was given.

A discharge from liability for negligence, obtained from an infant unacquainted with English and under circumstances of hardship and oppression, may well be set aside by the trial court.

Voluntary payments made by one guilty of negligence to the person injured, need not be returned by the latter as a condition to the annulment of his own written release from liability.

An appellant cannot complain of the exclusion of a question which is practically answered later by the same witness in responding to another inquiry.

A retrial will not be granted for the exclusion of a question within the discretion of the trial court in determining the proper limits of cross-examination.

Argued November 4th—decided December 18th, 1908.

ACTION to recover damages for personal injuries alleged to have been caused by the defendant's negligence, brought

to and heard in damages by the Superior Court in New Haven County, *Roraback, J.;* facts found and judgment rendered for the plaintiff for $1,500, and appeal by the defendant. *No error.*

This is an action for damages for an injury sustained by the plaintiff, a boy about seventeen years of age, by having his hand caught between the revolving grinding-rolls of a machine in the defendant's factory, designed for the crushing or rolling of rubber, and upon which the plaintiff was working as an employee of the defendant.

These acts of alleged negligence of the defendant are described in the complaint: The floor in front of the machine was not level, but pitched downward at a sharp grade, and the machine stood at the top of the incline. Large amounts of water were negligently allowed to drain and run over the floor around the machine, and the wet, slippery and inclining floor was unsafe to work upon, all of which was well known to the defendant. That portion of defendant's factory around said machine was not a reasonably safe place for defendant's employees to work, owing to said wet, slippery and uneven floor. The grinding-rolls of said machine were not guarded so as to prevent persons falling against said machine. There was no shipper, break, or other device by which the machine could be stopped within reasonable time in case of accident. There were no cleats fastened to the floor to prevent defendant's operatives from slipping and falling against the rolls of the machine. The plaintiff, a boy aged seventeen years, had been employed by the defendant in said factory about one week, and was ignorant of the dangers connected with the operation of said grinding-machine. The plaintiff, while feeding said machine, was ordered by B. M. Warren, defendant's superintendent in charge of said factory, to hurry and feed faster. While attempting to carry out the orders of said superintendent and work faster, the plaintiff slipped on the wet and inclined floor about said machine and fell against

it, and his right hand was caught between said rolls and all four fingers of said hand were so badly crushed that they had to be amputated. The plaintiff never received any caution or instruction from the defendant in regard to the operation of said machine or the danger connected therewith.

The following facts were found by the trial court: The defendant corporation is engaged in the manufacture of reclaimed rubber, using therefor in its factory several machines practically alike and all operated by a shaft running underneath them, driven by a water-wheel. The machine itself consisted of two cast iron hollow cylindrical rolls, three feet long and sixteen inches in diameter set in the same horizontal plane, parallel to each other, and when in operation revolving toward each other from nineteen to twenty-one revolutions per minute. The top of these rolls was forty-four inches above the level of the floor in front of the machinery, and the two rolls were supported at each end by iron frames. By turning certain screws the front roll could be moved toward or away from the rear roll, so as to increase or diminish the space between the rolls. Under the rolls was a stock-box for catching material which had passed down between the two rolls. These rolls were for crushing and grinding powdered rubber fed through between them, which to be well ground must pass through them several times.

The machine on which plaintiff was hurt was so constructed that it could not be stopped without stopping the water-wheel itself; and to stop the machine it was necessary for some person to go to the water-wheel pit, about thirty feet away, and turn a wheel by which the water-wheel was gradually slowed down and stopped.

A rubber grinding machine like that on which plaintiff was injured, with no device for stopping it in case of accident, without stopping the main power itself, is unusual and extraordinary.

When what is called "washing" was done on these ma-

chines, large quantities of water were allowed to drop on and flow onto the rolls and run onto the floor, and the floor in front of and around the machines was always wet when the machines were used for washing, and a board or block was placed on the floor and used by the operator to stand on so as to keep his feet dry. The use of the same machines for both sheeting and washing was unusual and peculiar to defendant's mill, and was dangerous, because it made the floor slippery and unsafe.

On or about September 8th, 1906, the defendant's superintendent assigned the plaintiff, an Italian boy about seventeen years old, who entered the employ of the defendant on the 22d of the previous month, to work on the rolls. He gave plaintiff no caution or instruction regarding the operation of any of the machines, except to say in English, which it did not appear the plaintiff understood, "Men on machines must keep their eyes open and all machinery must be watched." He gave plaintiff no caution or warning about the inclining floor, or the danger of slipping on same, or the danger of the movable block slipping on which he was ordered to stand.

One Rocco, at the direction of the defendant's superintendent, showed the plaintiff the operation of the machines, and pointed out how the machines were adjusted and how the sheets of rubber were formed between the rolls, and plaintiff was told by him not to get his fingers between the rolls or to put them beyond a certain point, or he would lose them. Rocco was not a proper or competent person to instruct green hands, like the plaintiff, in the operation of the machines. On the third day after he had been turned over to Rocco for instruction, plaintiff was left to operate the machines alone, and continued to operate one alone up to the time he was injured.

On September 13th plaintiff was making rubber sheets on one of said machines. This operation consisted of putting three shovelsful of powdered rubber on top of the

rolls. After being ground between them the powder becomes a plastic mass and drops in pieces into the stock-box below. The operator picks up these pieces with his hand and throws them on top of the rolls again. The superintendent had assigned plaintiff to work on this particular machine the day before. During the day he told plaintiff he was working too slow, and that he must work faster and make as many as the others did.

Just before the accident the plaintiff had put three shovelsful of the powdered rubber into the machines several times, but it did not mix well. The superintendent told him to put in another shovelful of powder, which he did. He then attempted to pick up the pieces of dough in the stock-box, to throw them onto the rolls, when the superintendent said: "Don't pick it up in pieces, take it up altogether and shove it in." Plaintiff then put the pieces of rubber dough together in an attempt to obey the order of the superintendent. To do so he was obliged to lift this mass, which weighed some sixty or seventy pounds, out of the stock-box, and put it forward from his body so that it would drop between the rolls and feed in. He attempted to do this while standing upon the block, and the position he was required to assume to make the necessary movements, caused the block to slip backward and away from the machine for about two feet, because of the slippery and inclined floor, and by such slipping, and without negligence on his part, he was thrown against the machine and his right hand went between the two revolving rolls. He cried out and seized the frame of the machine with his other hand and endeavored to prevent his right hand from feeding into the rolls. A fellow employee attempted to hold him away from the drawing force of the rolls, and shouted to Rocco to shop the water-wheel. Rocco went to the wheel-pit and attempted to stop the water-wheel, but did not succeed, and the plaintiff by his own efforts disengaged his hand.

The rolls were revolving slowly, and had this machine been equipped with any of the safety-devices in common use at that time they could have been stopped almost instantly, and probably before plaintiff had received any substantial injury whatsoever to his hand, at least before the serious injury actually suffered had been received. The four fingers of the plaintiff's right hand were so badly crushed between the rolls that amputation of the fingers became necessary.

While plaintiff was in the hospital, his father and mother called at the office of the defendant, and through an interpreter told the vice-president and general manager of the company that they wanted to know what the company was going to do. The manager told them that the company would give plaintiff a permanent job, and told the father to come to work at once. The father commenced work in defendant's factory September 24th, 1906, and was employed there until February 4th, 1907, when he was discharged. The plaintiff returned to work at defendant's factory November 11th, 1906, and remained there until January 21st, 1907, doing sweeping and similar work. On December 14th, 1906, the plaintiff was called into the office and his signature to a release of all his claims against the defendant was obtained by the bookkeeper and the superintendent of the defendant company. No interpreter or any other person, friendly to or in the interest of plaintiff, was present when the release was signed. The consideration expressed in the release was $107.50 received from the defendant. The defendant had voluntarily paid wages to the plaintiff since his injury, and part of his hospital bill, amounting in all to $75.50, but these payments were not made as a part of any agreement. The persons who procured the plaintiff's signature claimed to have told him that the paper was a release of all his claims against the defendant, in return for his doctor's bill and hospital bill and wages, and that he could work for the defendant

company at regular pay as long as he didn't get lazy. Soon after the release had been obtained the plaintiff and his father were discharged. It was the intention of defendant's superintendent to obtain this release without consideration, and the same was procured in such a manner that it would be grossly inequitable to hold the plaintiff to be bound thereby.

The trial court found that the defendant was negligent in the following particulars: In maintaining said inclining floor; in failing to provide wooden cleats or lattice-work for the employees to stand upon and prevent slipping; in causing large quantities of water to be discharged on the floor in front of the sheeting machines, thereby causing it to become slippery; in failing to exercise reasonable care to provide a reasonably safe place in which plaintiff was required to work in respect to said conditions; in operating the machines without any safety-device to stop same, without stopping the water-wheel; in failing to give plaintiff adequate instruction and caution in regard to the operation of said machine, and in ordering and permitting plaintiff to operate the mills alone, until he had become more experienced; in ordering plaintiff to stand upon the movable block without instruction and caution that the floor was sloping and when wet likely to be slippery, and that the block was likely to slip; in trying to hurry and force plaintiff, a green boy, to accomplish as much work on the machine as experienced men; and ordering him not to feed the rubber dough in pieces, but to lift it in all at one time.

The court further found that the plaintiff was in the exercise of reasonable care under the conditions prevailing, and that his injury did not result from a cause of danger that was obvious to him; and rendered judgment for the plaintiff for $1,500 damages.

Upon the trial the plaintiff's father, having been called as a witness in rebuttal to contradict defendant's claims as to what was said at the time the plaintiff's father and

mother called at defendant's office and had a conversation with the defendant's general manager, was asked on cross-examination this question: "Well, you understood, didn't you, that if Mr. Askam (defendant's general manager) paid the doctor's bill, and the hospital bills, and Joseph's wages, and did the rest of the things he said he would do, that that would settle the case?" This question was excluded upon plaintiff's objection. Subsequently, on cross-examination, he was asked: "Did Mr. Askam, or any one, say anything to you at the time of that conversation, . . . which led you to believe or understand that if Mr. Askam and the Company did what Mr. Askam said he or it would do, that it would settle Joseph's claim against the Company?" The witness having answered "No," was asked: "What did you suppose he was doing this for?" The court sustained plaintiff's objection to this question.

*Seymour C. Loomis*, for the appellant (defendant).

*J. Birney Tuttle*, for the appellee (plaintiff).

HALL, J. In his appeal to this court the defendant claimed that the superintendent's orders to the plaintiff to "put in another shovelful of powder", and "not to pick it (the rubber dough) up in pieces," but to "take it up altogether and shove it in," were the real cause of the accident, and that these acts of negligence were not alleged in the complaint, and were therefore erroneously made the basis of the judgment for substantial damages.

The complaint states a good cause of action, and properly describes several acts of defendant's negligence as the causes of the plaintiff's injury. All of them having been proved, the fact that several others were also established without objection, ought not to defeat the plaintiff's recovery.

But proof that these two orders were given, is not variant

from the averments of the complaint that the superintendent ordered the plaintiff "to hurry and feed faster," and directed him to work upon this machine. The plaintiff was not required to state in his complaint the precise words by which he was directed to work on this roller. The complaint contains a sufficient averment that he was so directed, and a sufficient description of the acts of negligence proved, to sustain the judgment rendered upon a hearing in damages after a default. *Anderson* v. *United States Rubber Co.*, 78 Conn. 48, 52, 60 Atl. 1057.

The complaint contains a direct allegation that the plaintiff's injury was caused by the defendant's negligence. A separate averment that the negligence of the plaintiff did not contribute to the injury, or that he was in the exercise of due care, was therefore unnecessary. *Brockett* v. *Fair Haven & W. R. Co.*, 73 Conn. 428, 433, 47 Atl. 763.

It is contended that the complaint is insufficient because it fails to aver that the plaintiff did not have equal means of knowledge with the defendant, of the alleged unsafe conditions, and *O'Keefe* v. *National Folding Box & Paper Co.*, 66 Conn. 38, 33 Atl. 587, is cited as sustaining this claim. In that case the complaint alleged that the plaintiff was negligently put to work in placing colored paper saturated with poison in a box greatly heated with steam. It was held, upon demurrer, that the facts alleged failed to sustain the averment that the defendant was bound to know of the presence of the poison, and that, so far as appeared, the plaintiff's means of knowing it were as good as the defendant's. In the case before us it appears sufficiently clear from the averments of the complaint that the defendant knew of the unsafe conditions described, and of the plaintiff's inexperience, and that the boy, seventeen years old, who had worked on the machine but a few days and that without adequate instructions, had not the knowledge or means of knowledge possessed by the defendant, of the danger of the work which he was directed to perform.

Assuming that the defendant might upon the hearing in damages have availed itself of a legal discharge from all liability, the trial court properly treated the release presented in evidence by the defendant as invalid. The infancy of the plaintiff, his ignorance of the English language, and the circumstances under which the release was procured, were sufficient reasons for setting it aside. As it was presented upon a hearing in damages, the plaintiff was not required to plead its invalidity, and as the payments by the defendant of plaintiff's wages and a part of his hospital bills are found to have been voluntary and not made under any agreement of settlement, it was not necessary to make the return of the sum so paid a condition to the annulment of the discharge.

The defendant was not prejudiced by the exclusion of the question asked the plaintiff's father on cross-examination, whether he did not understand that if Mr. Askam paid certain bills and did certain things, that would settle the case, since the witness afterward answered practically the same question. Whether the next question, " What did you suppose he was doing this for?" should have been allowed, was so far a matter of discretion with the trial court in determining the proper limits of cross-examination, that its exclusion is not a sufficient ground for a new trial. Other assignments of errors in rulings upon questions of evidence, not pursued in defendant's brief, are not noticed.

We discover no ground for the claim that the trial court did not apply the proper tests of negligence in holding, upon the facts found, that the defendant failed to sustain the burden imposed upon it by the default, of either disproving the negligence with which it was charged or of proving contributory negligence upon the part of the plaintiff.

There is no error.

In this opinion the other judges concurred.