MUNSON A. BASSETT *vs.* JOHN SHARES.

New Haven & Fairfield Cos., Jan. T., 1893. ANDREWS, C. J., CARPENTER, TORRANCE, FENN and PRENTICE, Js.

Under the practice act, which allows amendments of material variances and the disregard of immaterial ones, all that the old system of pleading sought to accomplish by the use of different counts for the same cause of action is now accomplished more effectually and at less expense.

But the use of such counts may be important in some cases, and the act does not forbid it, either expressly or by fair implication.

A motion that certain of such counts should be stricken out, or that the defendant should elect upon which he would go to trial, would be addressed largely to the discretion of the court.

It is a general rule that a party charged with negligent conduct will not be allowed to show that such conduct was common or customary among those engaged in an occupation similar to his own, or among those placed in like circumstances and owing the same duties.

A witness testified that he placed a seat in a wagon " in a manner that he thought secure." Held inadmissible, because a statement of a mere opinion, without the facts.

[Argued January 19th—decided April 7th, 1893.]

ACTION for an injury to the plaintiff's horse through the negligence of the defendant; brought to the Court of Common Pleas in New Haven County, and tried to the jury before *Studley, J.* Verdict for the plaintiff and appeal by the defendant for errors in the rulings and charge of the court. The case is fully stated in the opinion.

*C. S. Hamilton*, for the appellant.

*E. P. Arvine*, for the appellee.

TORRANCE, J.   The complaint in this case alleges in substance that the defendant drove his two horses attached to a wagon under a building then in process of erection, and negligently left them unhitched and without bridles, at a point where pieces of brick, mortar, and other material were likely to fall upon the horses and cause them to start and run; that the seat of the wagon was also negligently left in such a way as to be likely to fall on the horses' heels on the slightest motion of the wagon; that either some material fell upon the horses causing them to move and the wagon seat to fall upon their heels, or the wagon seat fell upon them, causing them to start and run; and that they ran violently into the horse of the plaintiff, then standing hitched in a public highway, doing the damage sought to be recovered in this suit.   The case was tried to the jury on a general denial and there was a verdict for the plaintiff.

The complaint contains two counts for this one cause of action.   They differ merely in this, that the first alleges in substance that falling material caused the horses to move, and this motion caused the wagon seat to fall upon their heels, in consequence of which they ran away; while the second states that the servant of the defendant carelessly caused the wagon seat to fall on the horses' heels and so caused the consequent run-away.

At the opening of the trial, the defendant moved that the plaintiff be compelled to elect on which of the two counts in the complaint he would proceed to trial, on the ground that the allegations of the two counts were inconsistent with each other.   The court overruled the motion, and this is the first error assigned.

Before the adoption of the practice act it was undoubtedly customary in this state to join in one declaration different counts for one and the same cause of action.   This practice was adopted principally to prevent a variance between alle-

Bassett *v.* Shares.

gations and proof, the consequences of which were often quite serious. 1 Swift's Digest, 604. The reasons for such a practice can hardly be said to exist under the practice act and the rules made in pursuance of its provisions. By those rules immaterial variances are to be wholly disregarded. In all cases of material variance an amendment is permitted at any stage of the trial. In such cases, if the allegation was made without reasonable excuse, or if the adverse party has been actually misled thereby to his prejudice, the amendment is to be made on terms; in other cases it is to be allowed without costs. By these and other provisions contained in the practice act and rules, all that the old system of pleading sought to attain by the use of two or more counts for the same cause of action is now accomplished more effectually and at less trouble and expense. The necessity for adopting the practice in question in any given case under our present system of pleading and practice can therefore hardly be said to exist.

But while this is so we are not prepared to say that such a practice is now absolutely prohibited. The practice act and rules nowhere expressly forbid the joinder in the same complaint of different counts for the same cause of action, nor do we think they do so by any fair implication. Judge Origen S. Seymour, one of the commission that reported the practice act for adoption, in his lecture upon that act delivered in the Yale Law School soon after its adoption, uses the following language upon the point in question :—" There is nothing in the act to forbid the introduction into an action of several counts for the same cause, but the necessity of several counts has hitherto arisen mainly from a desire to avoid a variance and from an uncertainty in the pleader's mind as to the proper form of action. This necessity can hardly arise under the practice act."

In this view we fully concur. The intent of the practice act undoubtedly is that there shall be but one count where there is but one cause of action; and ordinarily no more should be allowed. We are not, however, prepared to say that it can never be necessary now under any circumstances

to join in one complaint two counts for the same cause of action. There may possibly be cases where a plaintiff should be at liberty to do so. Where it is done unnecessarily the ordinary motions to strike out or otherwise correct the pleadings will generally afford the defendant ample protection and permit the trial court to exercise a wise discretion in the matter.

In the case at bar the two counts appear to have been inserted in good faith from an apparently reasonable apprehension of a variance which would require an amendment. It seems to us that the defendant's purpose in making the motion now under consideration would have been more effectually and conveniently obtained under our present practice, at an earlier stage of the case, by a motion to strike out or expunge one of the counts or to otherwise correct the complaint. If the motion had been made earlier it would have been entitled to more consideration. The defendant by delaying the motion till the opening of the trial might fairly be regarded as waiving the objection.

But whether the purpose of the defendant was sought in one way or the other, it was equally a matter addressed largely to the discretion of the court. Whether a necessity for the use of two counts existed in the present case we need not determine. It is enough to say that the allowance of the motion actually made was one addressed to the sound discretion of the trial court, and we cannot see that such discretion was exercised illegally or unwisely to the prejudice of the defendant.

The other errors assigned relate mostly to the rulings of the court upon questions of evidence, which will now be considered.

One Baldwin, a witness for the plaintiff, was asked by the defendant whether the defendant's team at the time in question was "standing in the ordinary place in the ordinary way." His answer to this was on objection excluded and of this he complains.

The question was a very vague one at best, and objectionable on several grounds. It was not a proper one perhaps

on cross-examination under the circumstances. It assumed a fact which was neither admitted nor proved, namely the existence of a custom or practice, more or less general, to leave horses at this place in the manner the defendant had left his horses there. The specific ground on which the answer was claimed or excluded is not stated.

In his brief the defendant's counsel seems to claim it on the ground that it tended to show that the defendant was not negligent, and we shall assume that it was claimed and excluded on that ground. The argument seems to be that if other teamsters left their teams in this place and in this way, the defendant in so leaving his was not negligent, because he acted as others did under like circumstances. But the mere fact, which was all the defendant offered to prove, that other teamsters had so left their teams, was of itself of no consequence. Until it was proved or admitted that the others in so doing had acted with ordinary care, no valid inference could be drawn from their conduct that the defendant in imitating it had acted with ordinary care, and so the evidence excluded was irrelevant. The plaintiff did not admit that they had so acted, and if the defendant had attempted to prove that fact it would have involved the trial of each several case as to this point. It will hardly be claimed that he was entitled to do this.

The general rule unquestionably is that a party charged with negligent conduct will not be allowed to show that such conduct was common or customary among those engaged in an occupation similar to his own, or among those placed under like circumstances and owing the same duties. Deering on Negligence, § 9. There are undoubtedly exceptions, or seeming exceptions, to this rule, but the instance we are now considering is not one of them. Under the circumstances the evidence was properly excluded.

The errors assigned in the ninth, tenth, eleventh and fifteenth reasons of appeal are of the same kind and nature as the one we have last considered. They each and all relate to what others, including the plaintiff himself, did or omitted to do, or were accustomed to do, in leaving teams in this

place at other times and occasions than the one in question. For the reasons already given we think the rulings complained of in the four above named assignments were correct.

The plaintiff testified that on the day of the runaway, after his horse had been injured thereby, he had a conversation with the defendant about the matter, in which the defendant said it was an accident and accidents would happen, but he would do what was right about it; that he would pay the veterinary surgeon's bill and would let the plaintiff have the use of a horse while the injured horse was laid up. The defendant objected to this evidence on the ground that it was irrelevant and was a matter of compromise. We cannot from the record see that it was either the one or the other. It was clearly to some extent an admission by the defendant, and it does not at all appear that it was made by way of compromise.

Dr. Whitney, a veterinary surgeon, and a witness for the plaintiff, stated that the plaintiff's horse had been made permanently lame by the injuries it had received. On his cross-examination he stated in substance that he had given the plaintiff directions to use and exercise the injured horse which he thought or had said had not been fully carried out, and that if they had been perhaps it would have been better for the horse. The defendant offered no testimony to prove, nor did he claim to the jury, that the lameness of the horse was due to treatment or a failure to follow the directions of the veterinary surgeon. To rebut this evidence thus called out on cross-examination the plaintiff was permitted to testify, against the defendant's objection, what Dr. Whitney told him to do about exercising and using the horse, and that he had followed the directions.

As the defendant offered no testimony and made no claim that the lameness was due to treatment or a failure to follow the directions of the doctor, it is difficult to see how he was in the least harmed by the ruling of which in this instance he complains, even if it was erroneous. But we cannot see from the record that it was erroneous. Whatever else it may be claimed Dr. Whitney said on cross-examination, he

does clearly appear to say that he gave certain directions to the plaintiff to exercise the horse, which the plaintiff did not fully carry out. This was apparently new matter called out for the first time on cross-examination. The plaintiff could not then know that the defendant would claim nothing from it, and we think he had a right to show what the directions were and that he complied with them as far as was reasonably possible.

The plaintiff testified that the horse in question, at the time of the injury, was in his possession under a contract with the right to purchase; that his business was that of a teamster and farmer; and that he had been obliged to hire a horse in place of the injured horse while it was laid up. He offered no testimony as to what his business was, other than the general statement aforesaid, and he made no claim that his business had been injured in any way. The defendant offered certain evidence to show that the business in which the plaintiff used his horses was that of the plaintiff's brother, E. M. Bassett. This evidence was made up mostly of receipted bills made out in the name of E. M. Bassett. The court excluded the evidence. Under the circumstances we think it was properly excluded.

On the morning of the second day of the trial the plaintiff called one Smith as a witness, who testified concerning the runaway and the cause thereof. On cross-examination he was asked if he knew why he had not been called to testify the day before, when he was present in court all day and the court had adjourned for want of a witness? The record does not show on what ground the defendant claimed this evidence, and we are unable to see any good ground on which it could be claimed or that its exclusion did the defendant any harm.

Clyde C. Scovill, a witness for the defendant, and the teamster who had charge of the defendant's team at the time of the injury to the plaintiff's horse, testified as follows : " You put up your seat on your board you say ? " " Yes sir." " On which side, the near or the off side ? " " Off side." " And in such a manner as you thought secure ? " " Yes sir." This

last question was objected to and excluded, but on what ground does not appear. It was we think properly excluded, because it called for the opinion of the witness in a case where there was apparently no necessity for so doing, and especially because it called for the statement of an opinion without a statement of the facts upon which it was based.

For the same reasons, and also because it cannot under the facts stated have done the defendant any harm, we think the ruling complained of in the thirteenth assignment of errors was a proper ruling under the facts disclosed by the record. The defendant asked a witness as to the habits of said Scovill in the handling of horses, and whether he was a prudent, careful man in such matters. No claim was made by the plaintiff that the defendant in employing Scovill had employed a careless driver. This being so the evidence was irrelevant upon the question of negligence then before the jury, and it was properly excluded. *Morris* v. *Town of East Haven*, 41 Conn. 252.

A witness for the defendant testified that he had seen the plaintiff's horse in a sale stable about three years before the accident, when he examined it with the view of buying it. He was asked at what price the horse was then offered for sale. The question was on objection excluded. Presumably this evidence was offered as having some bearing on the question of the value of the horse at the time of the accident. It may have had some slight bearing upon that question, but inasmuch as the defendant had full opportunity to show, and for all that the record discloses did show, the actual value of the horse at the time of the accident, the action of the court in ruling out this question, even if we grant that it was erroneous, which we do not, clearly did the defendant no harm.

The defendant in his own behalf testified, in effect, that in agreeing to pay the surgeon's bill, and to let the plaintiff have the use of a horse, he had acted from motives of sympathy and humanity merely, moved thereto by the plaintiff's story of his misfortunes, and not from a sense of obligation to repair a wrong done by him, or as an admission of such

wrong. To rebut this evidence the plaintiff was allowed, against the defendant's objection, to show that the defendant had brought a suit against the plaintiff to recover for the use of his horse and the amount paid to the veterinary surgeon, which was then pending. The bringing and pendency of such a suit was inconsistent with defendant's testimony upon the point in question, and the evidence objected to was relevant upon the rebuttal.

The last two assignments of error are based upon the charge to the jury. As to these, it is sufficient to say that upon an examination of the charge we are unable to discover any error therein, certainly none that would entitle the defendant to a new trial.

There is no error apparent on the record.

In this opinion the other judges concurred.