FERDINAND GIRARD *vs.* THE GROSVENORDALE COMPANY.

First Judicial District, Hartford, May Term, 1909.
BALDWIN, C. J., HALL, PRENTICE, THAYER and RORABACK, Js.

While a servant does not ordinarily assume risks of injury incident to his employment which are due to the negligence of the master, yet he may be chargeable with the assumption of an extraordinary risk arising after his employment and due to the negligence of the master, if, with knowledge and appreciation of the peril, he vol-

Girard *v.* Grosvenordale Co.

untarily continues to remain in a place of danger; and therefore a charge to the jury which virtually excludes from their consideration the question of the assumption of such a risk by the servant, is misleading and harmful to the master.

The fact that a servant is injured while acting in an emergency to save other employees from harm, does not warrant his recovery if he has assumed the risk in question. That fact, however, may have a bearing upon the question of whether he actually assumed the risk, and also upon the question of his contributory negligence.

The risk is not assumed where the master induces the servant to remain by a promise to remedy the defect; but a mere belief or expectation that it will be remedied is not enough: a promise of the master or its equivalent must be shown.

It is the duty of the master to use reasonable care to furnish the servant with a safe place to work, and to establish proper rules and regulations regarding the condition of the instrumentalities and their operation, and to use reasonable care to see that they are enforced. One to whom these duties are delegated becomes a vice-principal and the master is liable for his negligence. Under such circumstances the defense of fellow-servant is inapplicable.

As aiding the jury in determining the time required to shut off power in an emergency, evidence is admissible as to the time required to shut it off under ordinary circumstances.

It is within the discretion of the trial court, after its attention has been called, in the absence of the jurors, to the fact that the defendant master was insured against liability for injuries to his employees, to permit counsel for the plaintiff servant to inquire of the jurors about to be sworn whether any of them are stockholders of, or are otherwise interested in, such insurance company.

Argued May 5th—decided July 20th, 1909.

ACTION by a servant to recover damages for personal injuries alleged to have been caused by the defendant's negligence, brought to the Superior Court in Windham County and tried to the jury before *George W. Wheeler, J.;* verdict and judgment for the plaintiff for $5,000, and appeal by the defendant. *Error and new trial ordered.*

*Charles E. Searls*, for the appellant (defendant).

*Donald G. Perkins*, for the appellee (plaintiff).

THAYER, J. The plaintiff was employed as a scourer in

the defendant's cotton mill in a room known as the new spinning room, and also in a smaller adjoining room. There was no dispute between the parties that, while the plaintiff was in the small room on the day named in the complaint, he was struck by a falling counter-shaft, and thereby injured as alleged in the complaint.

The question upon the trial was whether the injury was caused by the negligence of the defendant, set up in the first count of the complaint, so as to give the plaintiff a right of action against it. The negligence alleged is that the defendant, in operating the spinning frames in that room by power conveyed to them through belts connecting the same to sundry pulleys upon counter-shafts attached to the ceiling of the room, which shafts received their power through belts from a main shaft, also attached to the ceiling of the room, which was driven by power from an engine, for a long time previous to the injury had been negligently running and operating those shafts at an excessive and high rate of speed, and had negligently failed to strongly and securely adjust and fasten the main shaft and its connections so as to withstand such excessive speed, and had failed to provide a suitable system for the examination and inspection of such shafting, pulleys, and other connections, and to examine and inspect the same; that through the negligence of the defendant one of the large pulleys on the main shaft was weak, defective, and cracked, which was known to the defendant, and on the day of the injury, while that shaft and pulley were being operated at a high and excessive speed, a large portion of the face of the pulley broke out and was separated from the pulley, which was seen and known by the defendant through its servants, yet it negligently suffered and allowed the shafting and pulley to continue to revolve at a high and excessive speed, and failed to shut off the power driving the shaft, although the pulley and shaft were, through the loss of the portion of the face of the pulley, out of balance, and pound-

ing badly, whereby the main shaft became loosened and fell from its fastenings, and, revolving as it fell, tore down the counter-shafting, which struck the plaintiff and caused his injuries.

After the evidence was closed, the court instructed the jury that there was no evidence to support the second count, which charged negligent treatment of the plaintiff by a doctor employed by the defendant, and no evidence to support the allegations of negligence in the first count prior and up to the breaking of the large pulley; and that the only question of negligence arising in the case for their determination rested upon what took place after the breaking of the pulley, not what took place before, and that the plaintiff did not rely upon a violation of the duty of the defendant in failing to use reasonable care to furnish competent fellow-servants or reasonably safe appliances and instrumentalities, but upon the violation of its duty to use reasonable care to furnish him a reasonably safe place in which to work.

The plaintiff claimed that just prior to the accident he had been cleaning a spinning frame in the new spinning room, and, having finished it, went in search of his overseer to obtain instructions. He first went to the overseer's office down stairs, and, not finding him there, went to the small spinning room, where the accident happened, to look for him. As he entered the room he saw that the pulley was broken, that the belt was off, that the pulley was running unevenly, and with a beat or hammer, and that it was pulling on the hangers which fastened the shafting to the ceiling, and that the whole floor was shaking, and that if it continued, some portion or all of the shafting was liable to come down at any time. He passed into the room, and by voice and motions directed the help employed at the spinning frames to get away. He remained in the room for ten or twelve minutes when the shafting fell.

The defendant, among other things, claimed that the

plaintiff assumed the risk of his injury. The court, having properly instructed the jury as to what was essential to a finding that the plaintiff had assumed the risk, instructed them as follows: "If you so find that this risk was assumed in the manner I have suggested and as I have said, there can be no recovery unless you find further that the defendant's negligence subsequently arising after the broken pulley caused the accident and injury to the plaintiff, of course, to which the plaintiff did not by his own negligence contribute; and second, unless you find that the plaintiff was there as he claims, in the course of his duty, and while there, seeing the broken pulley and anticipating danger to the girls at the frames, remained to get them away and keep them away from danger, and while so engaged was injured through the defendant's negligence in not having used reasonable care to have the power shut off." The defendant assigns error upon this part of the charge.

It is true, as the jury were told, that risks arising out of the master's negligence are not risks which are ordinarily incident to the servant's employment, and are not ordinarily assumed by him as a part of his contract of employment. But there are extraordinary risks from unsafe instrumentalities, or unsafe places to work, which may arise after the employment, through the master's neglect to properly operate, repair, or care for such instrumentalities or places, and these, when they and the danger arising from them are known to and appreciated by the servant, may be assumed by him. 1 Labatt on Master & Servant, p. 638, § 274; *Carrigan* v. *Washburn & Moen Mfg. Co.*, 170 Mass. 79, 80, 81, 48 N. E. 1079; *Murphy* v. *Grand Trunk Ry. Co.*, 73 N. H. 18, 20, 58 Atl. 835; *Conley* v. *American Express Co.*, 87 Me. 352, 356, 32 Atl. 965; *Hayden* v. *Smithville Mfg. Co.*, 29 Conn. 548, 558. Such assumption of the risk prevents a recovery by him from the master. The instruction complained of was tantamount to telling the jury that if the plaintiff's injury was due to the defendant's negli-

gence in continuing to operate the shaft and pulley after the latter was broken, the plaintiff could recover, although he had assumed the risk of injury from such negligence. This was the only negligence alleged in the complaint which, under the previous instructions of the court, was then before the jury. It was the risk arising from remaining in the room, rendered unsafe by this negligence of the defendant subsequent to the breaking of the pulley, which it claimed that the plaintiff had assumed. If he had assumed it, he could not recover; not because the defendant was not negligent, but because he had assumed the risk. The instruction permitted him to recover, if the jury found the defendant negligent, although he had assumed the risk. In this·there was error.

Nor would the fact that the plaintiff was injured while engaged in the work of the defendant while acting in an emergency to save the defendant's employees from injury, and as the necessities of the case fairly and reasonably called for his doing, as he claimed, warrant the plaintiff's recovery if he had assumed the risk. If the plaintiff acted in such an emergency as he claimed, that fact would have a bearing upon the question of his contributory negligence, and perhaps also upon the question whether he in fact assumed the risk. But if he assumed the risk, the master was not responsible to him for his injuries, as the court in another part of the charge instructed the jury he would be.

The plaintiff urges that if the law is so that, when a servant, knowing of the existence of a defect due to the master's neglect, and appreciating the danger of it, voluntarily chooses to continue in the service, he assumes the risk, it is presupposed, in such a case, that the master intends to have the work go on with the defect, and that there is always an exception where the master induces the servant to remain by promises to remedy the defect. And he says that the defendant was not harmed by the instruction first

considered, because in the present case the entire question of assumed risk might properly have been withdrawn from the jury, for the reason that the master did not intend to have the work go on with the broken pulley, and had taken steps, as the plaintiff knew, to shut down and thereby remove the defect. The defendant had, as appears, taken steps to shut down, but it does not appear that the plaintiff had knowledge of that fact, and in reply to a question testified merely that he believed that they would shut down. There must be the promise of the master, or its equivalent, inducing the servant to remain in the employment, to relieve him from the assumption of the risk and throw it upon the master. That was not the case here. No promises were made, and no inducements held out to the plaintiff. His act was purely voluntary so far as appears. The court could not properly have taken the question of assumed risk from the jury, and the charge as given was harmful to the defendant.

There are several other assignments of error predicated upon the court's refusal to charge as requested, and the charge as given, relative to the question of the assumption of the risk. So far as these assignments have been pursued in the argument, they revolve around the question, already considered, whether the plaintiff could assume a risk of injury resulting from the defendant's negligence. That he could do this is unquestionable; whether he did it or not was, upon the evidence and claims of the parties, a question of fact for the jury, and could not properly be taken from them by the court, as it was requested to do by the defendant.

The defendant claimed that the plaintiff's injuries were caused by the negligence of a fellow-servant, and made several requests to charge in support of the claim. The court refused to give the requests, saying to the jury: "The fellow-servant defense is not in the case. . . . It is no part of the pleadings in the case, not made a special defense

here, and so I shall not refer to it." This is assigned for error.

It was the duty of the defendant to use reasonable care to furnish the plaintiff with a safe place to work, and to have rules and regulations regarding the care and condition of the shafting and other instrumentalities and their operation which would keep the place in such condition, and to use reasonable care to see that these rules and regulations were enforced. If these duties were delegated by it to its officers, agents, or servants, they became vice-principals, and stood in place of the defendant in that respect. The court had so instructed the jury. All the evidence in the case bearing upon this subject shows that it was the agent to whom these duties were entrusted who permitted the shafts to revolve after the pulley was broken and until the plaintiff was injured. The court was correct, therefore, in saying that the fellow-servant defense was not in the case; not because it was not pleaded, but because, upon the evidence, if there was negligence, it was that of the defendant and not that of the plaintiff's fellow-servant.

The court's direction to the jury, that they must not predicate a verdict upon the alleged negligence of the defendant prior to the breaking of the pulley, removed from their consideration all of the evidence to which exception was taken at the trial, except that of Arnold and Tourtellotte. The defendant's assignments of error, so far as based upon the admission of the evidence thus withdrawn, need not be considered. The rulings, if erroneous, were harmless. Arnold and Tourtellotte testified as to the time required to shut off power in the engine-room and stop the operation of the mill. This was objected to as immaterial, because this evidence did not show the time required to shut off the power under the circumstances of emergency existing at the time of the plaintiff's injury. The evidence informed the jury of the time ordinarily required to stop the mill, and would aid them in determining whether, un-

der the circumstances and emergency existing at the time of the accident, it could have been stopped in time to prevent the plaintiff's injury. Its weight was for the jury. But it was material as bearing upon the question of the defendant's negligence, and properly admitted.

Before the jury was impanelled counsel for the plaintiff, in the absence of the jurors and in the presence of counsel for the defendant, informed the court that the defendant was insured against liability for damage to the plaintiff through negligence, by an insurance company, and that the insurance company was interested and conducting the defense. Counsel for the defendant admitted the fact of the insurance. The plaintiff's counsel claimed the right to inquire of the jurors whether any of them were stockholders, officers, agents, or employees of the insurance company, as affecting the qualification of the jurors. The defendant objected to this, but the court permitted it to be done, and in impanelling the jury such questions were asked of them by the plaintiff's counsel. Exception was taken to this, and it is assigned as error.

So far as appears, the inquiries were made in good faith, for the genuine purpose of learning whether any of the jurors were disqualified by interest, and not for the purpose of getting before the jurors a fact not in issue in the case for the purpose of prejudicing them. The facts were not called to the jury's attention until permission had first been obtained from the court in their absence. It was within the discretion of the court to grant this permission if, upon the statements of counsel, there was any reason to believe that any of the jurors would be interested, as stockholders or otherwise in the insurance company, in the result of the action. Ordinarily such interest on the part of jurors in this State in a foreign insurance company would hardly be presumed. But it is possible that the agent of the company who placed the insurance, or claim agent or adjuster who had been employed in attempting to settle the claim,

might be among the jurors summoned. It cannot, therefore, be said that in all cases it is improper to permit counsel to ask such questions as were permitted in this case to determine whether jurors are disqualified. Cases are cited from other States holding that it is error to permit the fact of the insurance to be brought to the jury's attention by questions asked in the examination of witnesses, by remarks of counsel in argument, or by questions asked of jurors while they are being impanelled. For the reason stated, we think cases may exist in which such questions may properly be permitted in determining the qualifications of the jurors, and that in the present case it does not appear that the court's discretion was improperly exercised.

The court was requested to direct a verdict for the defendant, and after the verdict was rendered, motions were made to set it aside as being against the evidence, and because the damages awarded were excessive. As a new trial must be granted upon the grounds already stated, it is unnecessary to consider the other questions raised by the appeal.

There is error in the charge and a new trial is ordered.

In this opinion the other judges concurred.