EDITH G. WORDEN, ADMINISTRATRIX, *vs.* THE GORE-MEENAN COMPANY.

Third Judicial District, Bridgeport, October Term, 1910.
HALL, C. J., PRENTICE, THAYER, RORABACK and WHEELER, Js.

An imperfect, argumentative form of statement in a complaint is waived by pleading a general denial and going to trial thereon.

The relation of master and servant does not imply a knowledge and assumption by the latter of extraordinary risks, that is, risks that are not ordinarily incident to the employment in which the servant is engaged; and therefore in an action to recover damages for personal injuries resulting from such a risk and alleged to have been caused by the master's negligence, the servant is not required to aver and prove that he had not assumed them, or had no knowledge of them, in order to make out a prima facie case. In such cases it is for the master to show knowledge and assumption of the risk on the part of the servant.

The necessarily dangerous nature of the work in which a servant is engaged does not relieve the master from his legal obligation to use reasonable care to make the place reasonably safe in view of the character of the undertaking and the results to be accomplished.

Having correctly stated this obligation, the trial court in refusing a request of the defendant master, said to the jury that it was the defendant's duty to keep the underground tunnel, in which the plaintiff's intestate was at work and which caved in and killed him, in as safe a condition as he could consistently with a reasonable and practicable carrying on of the work there. *Held* that this must have been understood by the jury as describing the conditions in the tunnel which the defendant should use reasonable care to maintain, and that as so understood the instruction was correct, or, if incorrect, that it could not have harmed the defendant.

In the present case the plaintiff's intestate, a laborer, was suffocated and killed by the caving in of an underground tunnel which was being constructed by the defendant, and whose negligence in failing to timber the sides and roof, and to discover its dangerous condition, was alleged to have been the cause of the accident. The plaintiff contended that these defective conditions were not ordinary risks of the intestate's employment and were not assumed by him, while the defendant insisted to the contrary. *Held* that the trial court, having correctly instructed the jury in reference to these claims, properly left it to them to determine whether these defects were the ordinary hazards of tunnel building, and if not,

Worden *v.* Gore-Meenan Co.

whether, as extraordinary risks, they had been assumed by the intestate.

Before a witness can properly be permitted to testify that another "knew" of certain conditions, it should at least appear that the foundation for his testimony is something more substantial than mere opinion or hearsay; and the mere fact that if the testimony proves upon cross-examination to be unfounded, or to rest upon hearsay, it can be stricken out, is immaterial.

It is not competent, as a general rule, for an expert witness to state his opinion unless the facts upon which it is based appear either in his own testimony or in the question put to him.

An expert witness having given his opinion that the conditions he observed in heading No. 2 of the tunnel, which subsequently caved in, were safe for work, provided no blasting was done there, was asked whether in his opinion it was proper to keep men at work in heading No. 3 where the intestate was killed. Upon objection this question was excluded. *Held* that if the propriety of keeping men at work in heading No. 3 depended entirely upon the safety of the conditions in heading No. 2, the defendant had the benefit of the witness' opinion; and if it depended upon other facts they should have been stated.

The plaintiff alleged that as heading No. 2 suddenly caved in, an immense amount of water and quicksand rushed into the tunnel and filled it with sand, rocks and refuse. *Held* that it was immaterial whether the sand above the heading was technically quicksand or not, inasmuch as all witnesses agreed that it would run in water and was commonly called "quicksand;" and therefore an inquiry as to the common test of quicksand was properly excluded.

Remarks of counsel which are outside of the issues and evidence in the case and made for the apparent purpose of exciting the sympathy and prejudices of the jury, cannot be too strongly condemned. Such conduct is in violation of the attorney's duty to the court, to his professional brethren, and to his client. But the punishment due him ought not to be visited upon his client, if, in view of the rebuke administered by the trial court, the disclaimer of associate counsel, the amount of the verdict, and all the other attendant circumstances, it is apparent that the jury were not misled or prejudiced by such misconduct.

Argued October 27th—decided December 16th, 1910.

ACTION to recover damages for negligence resulting in the death of the plaintiff's intestate, brought to the Superior Court in New Haven County and tried to the jury before *Bennett, J.;* verdict and judgment for the

plaintiff for $4,500, and appeal by the defendant. *No error.*

*Seymour C. Loomis,* with whom was *Walter D. Make-peace,* for the appellant (defendant).

*E. P. Arvine* and *Robert J. Woodruff,* for the appellee (plaintiff).

THAYER, J. The defendant, in constructing an underground tunnel, had opened a perpendicular shaft extending fifty feet into the ground, and from its foot had driven a portion of the tunnel about two hundred and fifty feet in length in an easterly direction and about five hundred feet in a westerly direction, the portion extending to the east being known as heading No. 2, that extending to the west as heading No. 3. The plaintiff's intestate was at work for the defendant as a laborer in heading No. 3, when a cave-in occurred in heading No. 2 whereby a large quantity of water, mud and quicksand rushed into the tunnel, filling both headings so suddenly that the intestate was shut off from reaching the shaft, his only means of exit, and was suffocated in the tunnel. It was charged in the complaint that the defendant was negligent in allowing the intestate to work in heading No. 3 while heading No. 2 was in a dangerous condition; that it was negligent in allowing heading No. 2 to be opened without timbering the sides and roof thereof so that they could not cave in; and that it was negligent in failing to discover the dangerous condition of heading No. 2, although it knew that the heading was cut through shallow rock, and that the rock roof of the heading had been weakened by repeated blasts of dynamite and was weak and leaky, and also knew that at the point where it was weakest there was a pond of water and a mass of quicksand and mud about forty feet

deep immediately over it.   There is no direct allega-
tion that heading No. 2 was in a dangerous condition,
but there is a clear inference to be drawn from the al-
legations, that the plaintiff's claim was that by reason
of the weak and leaky rock roof of the heading, and
the mass of superincumbent water, quicksand and mud,
conditions which were known to the defendant, and
because it had not properly timbered the heading,
it was in a dangerous condition; that its condition
rendered the entire tunnel a dangerous and unfit place
for the intestate to work; and that in employing him
in heading No. 3 under these circumstances, it neg-
lected the duty which it owed to him, and caused his
death thereby.

The complaint is a very imperfect piece of pleading,
but it was not demurred to, and all the paragraphs ex-
cept the first, which alleged that the defendant was
constructing the tunnel, were denied.   This was sub-
stantially the general issue, and the defendant by plead-
ing and going to trial upon a general denial waived all
mere formal defects in the complaint.   *Levy* v. *Metrop-
olis Mfg. Co.*, 73 Conn. 559, 563, 48 Atl. 429.

The defendant, after verdict, moved in arrest of
judgment because the complaint contained no allega-
tion that the intestate did not know nor have equal
means with the defendant of knowing the unsafe con-
ditions, and because no evidence had been offered
from which the jury could properly find such lack of
knowledge or means of knowledge.   The record shows
that there are no such allegations in the complaint,
and that no evidence was offered to prove the intes-
tate's ignorance of the conditions complained of, or
that he did not have equal means with the defendant
of knowing of the conditions and their dangers.

We think that such allegations and proof were not
necessary in the present case.   Where a servant sues

his master for neglect of duty in failing to provide reasonably safe machines or instrumentalities for the former's use in his work, we have held that he must allege knowledge or its equivalent on the part of the master, of the dangerous condition of the machine or instrumentality, and that an allegation of want of knowledge, or means of knowledge, on the part of the servant was an essential part of a complaint. *O'Keefe* v. *National F. B. & P. Co.*, 66 Conn. 38, 46, 33 Atl. 587; *Elie* v. *Cowles & Co.*, 82 Conn. 236, 240, 73 Atl. 258. These allegations were necessary, in the cases referred to, to show a neglect of duty on the part of the master. The servant, in engaging for service, is held to have assumed all the known or obvious dangers ordinarily incident to the employment, among which are those arising from the situation and use of the machines and instrumentalities provided for the work, but not those arising from the master's negligence. When, therefore, he counts upon a defective machine or instrumentality, or upon any defective condition which is an ordinary incident of the business so as to be within the risks which he is held to have assumed, he must, to make out a prima facie case, allege and offer evidence to prove facts which show that the risk arising from the defect complained of was not assumed by him, and that it was due to the defendant's neglect of a duty owed to the servant. This, whether the defect was a latent one existing at the time of the employment and known to the master and unknown to the servant, or was one which arose subsequent to the employment through the neglect by the master of his duty to inspect or repair, requires an allegation of knowledge of the defect on the part of the master, and of absence of knowledge on the part of the servant, or what is equivalent thereto. This is necessary in order to show that the risk was not assumed by the servant, and that the defect was one

of which the master should have given the servant notice, or which he should have prevented or remedied. But extraordinary risks, such as are not ordinarily incidents of the employment, are not assumed by the servant. He may by his conduct, when he has knowledge of such risks, assume them; *Girard* v. *Grosvernordale Co.*, 82 Conn. 271, 275, 73 Atl. 747; but such assumption of the risk is not imputed to the relationship of the parties as master and servant, or the contract of employment. It arises from the fact that the servant, knowing of the abnormal risk, has willingly encountered it. In the absence of facts showing that he has assumed such a risk he is not presumed to have done so, and he is not required to allege or prove that he had not assumed it, or had no knowledge of it, in order to make out a prima facie case. The rule is different in this class of cases from that which applies to ordinary risks, where there is a presumption that they were assumed from the relation existing between the parties by reason of the contract of service. 2 Labatt on Master & Servant, §§ 855, 856; *Vohs* v. *Shorthill & Co.*, 130 Iowa, 538, 107 N. W. 417; *Duffey* v. *Consolidated Block Coal Co.*, 124 N. W. (Iowa) 609; *Tucker* v. *Northern Pacific Terminal Co.*, 41 Ore. 82, 68 Pac. 426, 428. In such cases it is for the defendant to show knowledge and assumption of the risk on the part of the plaintiff. The risk, upon the allegations in the present case, was an extraordinary one, arising, after the service began, through the defendant's negligence, as claimed by the plaintiff. It was not necessary, therefore, for the plaintiff to allege or prove want of knowledge to present a prima facie case, and for this reason the motion in arrest was properly denied.

A motion to direct a verdict for the defendant, and to set aside the verdict, based upon the same grounds, were also properly denied.

The defendant requested the court to charge: "The work in which the plaintiff's intestate was engaged was necessarily dangerous by reason of his position while at work, and under such circumstances the rule of law which requires a master to furnish his servant a reasonably safe place to work does not apply."

This request was properly refused. The fact that the work was necessarily dangerous did not excuse the defendant from using reasonable care to make the place in which the intestate worked reasonably safe. In most cases it is not possible to make the servant's place of service absolutely safe, and the law does not require it. It must be made reasonably safe according to the circumstances, so far as reasonable care can make it so. What would be a reasonably safe condition must in any case depend upon the circumstances and necessities of the case, the nature of the work, and the results to be accomplished. The more dangerous the work the more reason there would seem to be that the defendant should use reasonable care to make the place reasonably safe, and clearly the fact of the dangerous nature of the work did not excuse it from such care.

Two other requests to charge, correct in their statement of law, were properly refused, as they had no application to the facts of the case except so far as they were embodied in the charge.

The court, in refusing the first of these requests, said to the jury that it was the defendant's duty to keep the tunnel in as safe a condition as it could consistently with a reasonable and practicable carrying on of the business there.

This is objected to because it required the defendant to keep the tunnel in a safe condition, when, correctly stated, the law required only that it should use reasonable care to keep it safe. The court had just stated this rule to the jury correctly, and they could

not have been misled by the statement complained of. It must have been understood by them as stating the conditions in the tunnel which the defendant should use reasonable care to maintain. It does not appear to us that the statement as made was incorrect as a statement of the law, or that, if so, the defendant could have been harmed by it. The same is true of a statement with respect to the inspection required of the defendant, to which exception was taken.

The plaintiff claimed that the danger arising from the defective conditions complained of was not an ordinary risk of the intestate's employment, and that he did not assume it. The defendant claimed that upon the facts shown it was an ordinary and obvious risk, and was assumed by the intestate. The court, upon proper instructions, left it for the jury to determine whether the defect complained of was one of the ordinary hazards of tunnel building, and if not, whether as an extraordinary risk, it had been assumed by the intestate, by continuing in the employment after he knew or should have known of it.

This action of the court is complained of upon the ground that there was no allegation in the complaint, and no evidence, which warranted it. This objection is founded upon substantially the same ground as the motion in arrest which has been considered. Upon the evidence and claims of the parties the questions were properly submitted to the jury for decision.

The other questions arising on the charge of the court were not pressed in argument, and require no comment here.

The questions asked the witnesses Johnson and Lee by the defendant's counsel on cross-examination, were properly excluded. They were not proper cross-examination, and their purpose was to get into the defendant's case before its turn.

Upon direct examination Lee, called as a witness by the defendant, having testified that he knew whether the intestate knew the conditions in heading No. 2 on the morning of the accident, was asked by the defendant's counsel: "Did he know?" Upon objection this was excluded.

The fact called for was a material one. If the witness had actual knowledge that the intestate knew the conditions, it was proper that it should be imparted to the jury; but if what the witness called knowledge was what he had learned from hearsay, it was not proper evidence. The ground of the objection to the question is not stated, but from the fact found by the court, that the witness was permitted to testify to the facts which he claimed showed knowledge, indicates that the court held the question improper as calling for an answer which might be founded upon hearsay or be mere opinion. Before asking such a question it should at least be shown that the statement expected from the witness was not mere opinion or founded upon hearsay. If the witness had heard the intestate state that he knew the conditions in the heading, or if he had seen him examine it and observe the conditions, or if the witness himself, or some one else in his presence, had told the intestate the conditions, these facts should have been shown, and, as appears, were permitted to be shown, if they existed. It is no answer to the objection to say that if the witness' statement was unfounded, or founded upon hearsay, such fact could be made to appear upon cross-examination, and the testimony then stricken out. Improper testimony should not be admitted. The objection to the question was properly sustained.

As the rulings upon the three questions asked by the defendant of its witness Mr. Hill present but a single question, we need discuss but one of them. The

witness is a civil engineer. Having testified that he visited heading No. 2 about two weeks before the accident, and having described the conditions as he found them in that heading, and having testified that in his opinion the conditions were safe for work provided no blasting was done in heading No. 2, and that he had made some suggestions to Mr. Lee, the defendant's superintendent, he was asked this question: "Now, if what you said to Mr. Lee was done before the accident, whether or not in your opinion it was proper to keep the men at work there in tunnels number 2 and number 3, provided they did not blast in tunnel number 2?" This and two similar questions based upon different conditions were, on objection, excluded.

The witness was qualified as a civil engineer to give his expert opinion as to the safety of heading No. 2, the conditions of which he had examined and described, and he was permitted to testify that they were safe for work if no blasting was done in that heading. Whether it was safe to keep men at work in heading No. 3 if no blasting was done in heading No. 2, was not a question for him to answer as an expert. If the propriety of keeping men at work in heading No. 3 depended entirely upon the fact of the safety of the conditions in heading No. 2, the defendant had the benefit of the witness' opinion when he testified that those conditions were safe; if it depended upon other facts, it was not competent for the witness to state his opinion unless the facts upon which he bases it are either stated by him or embodied in the question. *Chamberlain* v. *Platt*, 68 Conn. 126, 130, 35 Atl. 780; *Bassett* v. *Shares*, 63 Conn. 39, 46, 27 Atl. 421. Whether it was safe to employ men in heading No. 3 might depend upon its size, length, the opportunities and means of exit, and other facts which might or might not be known to the witness. It might also depend upon the

nature of the material resting upon the rock roof of heading No. 2. The witness, in the absence of knowledge that this was of such a character that, if the roof of heading No. 2 gave way, the material would immediately run through the entire tunnel, might regard it safe to keep the men at work in heading No. 3, although the roof of heading No. 2 should give way. The witness was asked his opinion on a question of fact which the jury were to decide, without stating the facts upon which he based his opinion. It is only in exceptional cases that this is permitted, and this case is not within the exception.

The question asked the witness Dawley, as to the common test of quicksand, was properly excluded as immaterial. The plaintiff's case did not depend upon the alleged fact that the sand above the heading was quicksand, and all the witnesses agreed that the sand would run in water and was what is commonly known as quicksand. It was immaterial whether technically it was quicksand or not.

Twice during the opening argument to the jury the junior counsel for the plaintiff improperly referred to facts which were not in evidence and which were entirely outside of the case. Objection was made to these remarks at the time, and the court stopped the counsel and rebuked him, stated that the language was improper, and, in one of the instances, that there was no evidence upon which to base the statement. The jury were not at the time or afterward cautioned that they were to disregard these remarks. The court was not then asked to withdraw the case from the jury, but was asked, after the rendition of the verdict, to set it aside because of these remarks. The request was refused.

When it is probable that a verdict has been influenced by the improper remarks of counsel, it should be

promptly set aside. It may be apparent from the nature of the remarks themselves that they have influenced the verdict. *Hennessy* v. *Metropolitan Life Ins. Co.*, 74 Conn. 699, 710, 52 Atl. 490. The client in such case is not entitled to retain it. But unless the client has obtained an advantage thereby, he should not be punished for the misconduct of counsel. "Attempts to influence verdicts or judgments, through the use of considerations which the law forbids, is a species of doing falsehood and a violation of the canon of truth." To assert "in argument, a fact that has not been proved," is "unprofessional" and "inconsistent with membership in" the legal profession. These quotations from the Code of Professional Ethics, recently adopted by the Bar Association of this State (See 82 Conn. 703, 704), express our views concerning this attorney's conduct as disclosed by the record. It was in violation of his duty to the court, to his professional brethren, and to his client. We are not disposed to condone such offenses when willfully committed. But the punishment due the offender should not be visited upon his client. Whether the defendant's request, that the verdict should be set aside and a new trial granted for the attorney's misconduct, had merit, depends upon whether the defendant was prejudiced by that misconduct. Apparently the trial court did not think it was. The objectionable remarks were made in the opening argument. They were, as found by the court, fully replied to by the defendant's counsel, after which the senior counsel for the plaintiff distinctly stated to the jury that the plaintiff did not ask for a verdict on the ground of sympathy, and that her right to recover depended entirely upon proof of the defendant's negligence. In its charge the court instructed the jury as to the facts which the plaintiff must prove to establish her case, and told them she must prove them by a fair pre-

ponderance of the evidence. The jury had heard the court say to counsel that the remarks were improper and without evidence to support them. The apparent purpose of the remarks complained of was to excite the sympathy and prejudices of the jury. We have carefully considered them in connection with the evidence, which is before us, and with the amount of the verdict, which was substantial. We think the jury could not have been prejudiced against the defendant by these remarks, in view of all the circumstances, and that it was not error to refuse to set the verdict aside.

There is no error.

In this opinion the other judges concurred.