OTILIE V. WITORT *v.* UNITED STATES RUBBER
COMPANY

FILE No. CV 4-6307-2005

ROBERT NOURY *v.* UNITED STATES RUBBER COMPANY

FILE No. CV 4-6304-1694

CHARLES B. SMITH *v.* UNITED STATES RUBBER
COMPANY

FILE No. CV 4-6508-4796

WILLIAM MOLNAR *v.* UNITED STATES RUBBER
COMPANY

FILE No. CV 4-6304-1695

APPELLATE DIVISION OF THE CIRCUIT COURT

Argued April 1—decided May 27, 1966

*William J. Larkin II,* of Waterbury, for the
appellant (defendant in each case).

*James J. Carroll,* of New Haven, with whom, on the brief, was *Alfred F. Celentano,* of New Haven, for the appellees (plaintiffs Noury and Molnar).

*Lewis Kiefer,* of Hartford, for the appellee (plaintiff Witort).

*Frank M. Grazioso,* of New Haven, for the appellee (plaintiff Smith).

KINMONTH, J. These actions were instituted to recover for damage to the paint on the bodies of the plaintiffs' automobiles caused by substances emanating from the defendant's factory. The defendant denied the allegations and set up a special defense of assumption of the risk in all cases, and an added defense of the Statute of Limitations in the Witort case.[1] The court found for the plaintiff in each case upon the doctrine of res ipsa loquitur. The defendant has appealed, assigning error in the court's conclusions.

The findings, which were not attacked, may be stated in summary as follows: On July 5, 1962, the plaintiffs Witort, Noury and Molnar, employees of the defendant, parked their automobiles in a parking lot which was provided by the defendant for its employees and was located adjacent to the defendant's factory buildings. While so parked, these automobiles became pitted and marked on the exterior surface by a chemical, known as "latex," which had escaped into the atmosphere from the defendant's factory. The chemical process used by the defendant in making "latex" took place under pressure in vessels or reactors which have a number of safety features attached, such as knockout pots, discs, safety valves and a pressure gauge which, under normal procedure, would be under watch by

---

[1] Counsel agreed that the principle of law was the same in all the cases, with the added question of the Statute of Limitations in the *Witort* case.

an operator. On the day in question, the safety valve "blew," owing to excessively high pressure, causing heated particles of "latex" to pass up the stack and out into the atmosphere. The safety valves and discs were, as a matter of routine, checked and replaced at regular intervals; the reactor vessel had been cleaned a few weeks prior; and the pressure gauges were flushed each morning to prevent blockage. There was no evidence as to the cause of the accident, although similar instances had occurred prior to July 5, 1962. The plaintiffs had never, prior to this date, noticed any posted warnings on the premises stating that automobiles were parked at the owners' risk. From these facts the court concluded that (1) the apparatus of the defendant was such that ordinarily no injury would result unless caused by the negligence of the defendant; (2) the inspection and use of the apparatus were in the complete control of the defendant; (3) the damage occurred without any voluntary action on the part of the plaintiffs; (4) the defendant was guilty of negligence which was the proximate cause of the damage; (5) the defendant has failed to produce evidence which precludes the likelihood of negligence or which rebuts the inference of negligence; (6) the plaintiffs did not assume the risk involved; and (7) the automobiles were not used in their employment.

In the *Smith* case, the facts are substantially the same except that the damage occurred on August 27, 1964, and was caused by a substance called "flexone," which was emitted through an escape pipe into an earthen bank, but owing to the high pressure the pipe became tilted upward and the chemical passed into the atmosphere.

The obstacle which the defendant can neither surmount nor bypass is the finding. Since there is no assignment of error seeking correction of the find-

ing, the subordinate facts cannot be changed. The conclusions in the cases at bar must be tested by the facts as found and must stand unless they are legally or logically inconsistent with those facts or unless they involve the application of some erroneous rule of law material to the cases. *Bridgeport Hydraulic Co.* v. *Sciortino,* 138 Conn. 690, 692; *Vitale* v. *Gargiulo,* 144 Conn. 359, 364; *Gorman* v. *American Sumatra Tobacco Corporation,* 146 Conn. 383, 386.

As to the defense of assumption of risk, the law is that the employee assumes the ordinary risks and hazards incident to his employment. The employee, however, does not assume any extraordinary risks or hazards connected with the employment. *Balla* v. *Lonergan,* 143 Conn. 197, 199. Assumption of risk becomes a question of law when the only logical or reasonable conclusion to be drawn from the evidence is that the injured party, with knowledge and appreciation of the risk, voluntarily encounters it. The test is comprehension of the risk, and that involves an appreciation of the character and extent of the risk, so that an adequate basis for voluntary decision as to its assumption exists. Assumption of risk may present a question of fact, or a mixed question of law and fact. In the present cases, there is nothing to make assumption of risk a question of law. There was no evidence that the plaintiffs knew of the possibility that chemicals would be emitted. Even if they had, it would not necessarily have availed the defendant. *Greene* v. *DiFazio,* 148 Conn. 419, 425. One is entitled to assume that another will exercise proper care until he perceives or ought reasonably to perceive that the other is not doing so, and he does not assume the risk that another will by some negligent act or omission subject him to danger. *Freedman* v. *Hurwitz,* 116 Conn. 283, 288. The present cases involve an extraordinary

risk, not ordinarily an incident of employment, and therefore not assumed. *Worden* v. *Gore-Meenan Co.,* 83 Conn. 642, 647; *Hassett* v. *Palmer,* 126 Conn. 468.

The defendant's assignments of error pertaining to the application of the doctrine of res ipsa loquitur and the burden of proof will be considered together. The plaintiffs claim that they made out prima facie cases of negligence under the doctrine of res ipsa loquitur, that the defendant failed to prove that the accidents were the result of situations beyond its control, and that therefore the plaintiffs were entitled to judgments. " '[T]he doctrine of *res ipsa loquitur* is a rule of common sense and not a rule of law which dispenses with proof of negligence. It is a convenient formula for saying that a plaintiff may, in some cases, sustain the burden of proving that the defendant was more probably negligent than not, by showing how the accident occurred, without offering any evidence to show why it occurred.' . . . Where common experience has demonstrated that no injury would ordinarily result from a situation, condition or apparatus unless there was careless construction, inspection or user, and the construction, inspection and user were all in the control of the party charged with neglect, no voluntary action of the party injured being involved, common sense permits an inference of negligence from proof of the injury and the physical agency inflicting it, without requiring proof of facts pointing to the responsible human cause. The result is simply that such proof, without proof of further facts tending to show negligence, satisfies the plaintiff's duty of producing evidence sufficient to permit the trier, whether court or jury, to draw an inference of negligence. . . . The doctrine permits, but does not compel, such an inference. . . . The doctrine has no evidential force, does not shift

the burden of proof and does not give rise to a presumption. . . . It is but a specific application of the general principle that negligence can be proved by circumstantial evidence." *Lowman* v. *Housing Authority,* 150 Conn. 665, 669; *Ruerat* v. *Stevens,* 113 Conn. 333, 337.

The inference of negligence which is permitted under the doctrine of res ipsa loquitur is, of course, rebuttable. The inference merely calls for evidence in explanation or rebuttal of the inference upon which the presumption rests. The presumption stands or falls with the inference. If no explanation or rebuttal is forthcoming, the inference remains and the presumption obtains. But if either is made, and in a degree satisfying the court's requirement, the inference is met, the presumption no longer exists and the decision must rest upon the evidence. *Schiesel* v. *Poli Realty Co.,* 108 Conn. 115, 120. The fact that the defendant employed modern machinery, provided for repeated inspection, and utilized other precautions, as shown by the finding, does not eliminate the possibility of negligence. Upon the facts found, the doctrine of res ipsa loquitur applies. "This does not mean that an inference of negligence must be made by the trier but that it may be. While its significance as such is confined to the establishment of a prima facie case, yet as we have said of a case tried to the jury: ' "When the case goes to the jury, the doctrine as such has no further application, but the facts upon which that application depends remain in the case to be considered alone or with other proven facts as the basis for an inference of negligence." ' " *Bagre* v. *Daggett Chocolate Co.,* 126 Conn. 659, 663; *Levine* v. *Union & New Haven Trust Co.,* 127 Conn. 435, 438. The inference of negligence remains in the case and will sustain a finding of negligence, even though there be countervailing evidence, unless

such adverse evidence so conclusively shows non-negligence of the defendant that reasonable minds, acting fairly, could not find it negligent. *Lund* v. *Phillips Petroleum Co.,* 10 Utah 2d 276, 279.

"Defendant in a res ipsa case may show by evidence how the accident happened, but ordinarily this does not entitle him to a directed verdict. The jury may still reject the evidence or find that the explanation does not preclude the likelihood of negligence. . . . In most res ipsa loquitur cases defendant cannot definitely explain the accident. His usual defense consists of proof of the precautions he did take in constructing, maintaining, and operating the injuring instrumentality. Once in a great while such proof may conclusively show that the accident did not in fact happen, or that it was not caused by the defendant. But this is seldom the outcome. And where it is not, defendant is in this dilemma: the less effective his precautions to prevent the occurrence the more apt they are to appear negligent; the more effective the precautions testified to, the less likely they are to have [been] taken in this case since the accident *did happen.*" Harper & James, Torts § 19.12, p. 1104; *Reynolds Metals Co.* v. *Yturbide,* 258 F.2d 321, 330. So, here, all the facts found by the court were available as a basis for its inference of negligence by the defendant. This is a reasonable inference from these facts and therefore cannot be disturbed. It is to be borne in mind that the defendant's evidence is to be weighed in connection with all of the evidence in the case, and that it is the prerogative of the trier to judge the weight of the evidence and the credibility of the witnesses.

The defendant assigns error in the overruling of its special defense of the Statute of Limitations in the *Witort* case; the action was commenced as a small claims action and was entered in court on

June 25, 1963. Service was made by registered mail on July 5, 1963. Defendant contends that, service having been made more than one year after the injury (July 5, 1962), the action is barred. The obvious answer is found in the rules making the signature of the plaintiff or his attorney and the payment of the entry fee the beginning of the action. Practice Book §§ 900, 901. Upon payment of the entry fee, the case is entered in court and the plaintiff has done all that is within his power to do to start the action; and even though the service of notice is not made within the statutory period, the Statute of Limitations stops running when the case is entered in court.[2] Stephenson, Conn. Civil Proc. § 192 (b), p. 204 (Sup. 1963) ; 54 C.J.S., Limitation of Actions, § 266. The court did not err in overruling the special defense of the Statute of Limitations.

There is no error.

In this opinion PRUYN and DEARINGTON, Js., concurred.

---

[2] It should be noted that § 904 (d) of the Practice Book provides that if service is not made by mail, without refusal by the defendant, a new notice may issue and be served by a proper officer or indifferent person upon the defendant in the same manner as complaints in ordinary civil actions. Whether, if this had occurred in the present case, the original filing under § 900 would stop the running of the Statute of Limitations we do not decide, nor are we called upon to do so.

Subsequent to the bringing of this action, § 905A of the Practice Book was adopted, which provides an alternative method of bringing a small claims action. "The docket sheet and notice form shall be served by a proper officer or indifferent person in the manner in which a writ of summons is served in a civil action . . . ." § 905A (c). "When service, return and filing have been completed as aforesaid, the service shall be deemed to be the commencement of the action." § 905A (d). Under this section, the commencement of the action would appear to be within the general rule, as stated in *Seaboard Burner Corporation* v. *DeLong*, 145 Conn. 300, 303, that " '[f]rom a very early date in this state the time when the action is regarded as having been brought is the date of service of the writ upon the defendant.' " (The words "brought" and "commenced" are synonymous. *Smith* v. *Wagner*, 92 Ohio App. 531, 533.)