C. M. VOHS, Appellee, *v.* A. E. SHORTHILL & COMPANY, Appellant.

**Master and servant:** NEGLIGENCE OF MASTER: DUTY TO WARN. It is the duty of the master to warn and instruct an inexperienced workman whose employment exposes him to peculiar or obscure danger which ordinary intelligence and prudence would not discover, and he cannot escape the obligation upon a plea that he was himself ignorant of the danger.

**Expert evidence.** In an action for personal injury, a physician who attended and treated plaintiff and knew his condition was competent to express an expert opinion as to the probable future consequences reasonably expected to follow the injury, without propounding hypothetical questions or stating any facts or series of facts as a foundation for the inquiry.

**Same:** CROSS-EXAMINATION. In the cross-examination of a medical witness a broader range of inquiry is permissible than in the examination of a friendly witness in chief. In the instant case the liberty extended is upheld.

**Assumption of risk:** PLEADING: SUBMISSION OF ISSUE. The assumption of a risk arising from the negligence of a master, the peril of which the servant assumes by remaining in the employment after he knows or as a reasonably prudent person should have known the danger, is an affirmative defense which must be pleaded, and a failure to plead the same will relieve

he court of the necessity of submitting that question to the jury.

**Negligence.** The negligence of servant to whom the master has intrusted a duty, is negligence of the master.

**Verdict: NOT EXCESSIVE.** A verdict of $2000 for the loss of an eye is held not so excessive as to warrant the interference of the appellate court.

*Appeal from Marshall District Court.*— Hon. OBED CASWELL, Judge.

SATURDAY, MAY 12, 1906.

ACTION to recover damages for personal injury. Judgment for plaintiff, and defendant appeals.— *Affirmed.*

*J. L. Carney,* for appellant.

*Boardman, Aldrich & Lawrence* and *F. E. Northrup,* for appellee.

WEAVER, J.— The defendant corporation owns and operates a foundry and machine shop in the city of Marshalltown, Iowa, and at the time of the accident in controversy the plaintiff was an employé in its service in and about said business. The plaintiff entered said employment on October 5, 1902. For a period of about four days he was kept at work in one of the buildings cutting rivets from old bridge beams and moving irons from place to place. On the fifth day of his service he was directed by the foreman to go into another shop and " help the blacksmith hold a rail." The blacksmith was engaged in cutting steel railway rails into short lengths. The process employed appears to have been to lay the rail upon an anvil and while plaintiff held it in position and the blacksmith held the cutting tool, a third person or striker delivered the blows with a heavy sledge. While plaintiff was thus engaged, and about three and a half hours after entering the shop, a flying piece of steel,

slivered or broken from the rail or sledge by the force of the striker's blow upon the chisel, entered the eye of plaintiff inflicting an injury destroying its sight. Plaintiff had no prior experience in iron or steel work, and this was known to the defendant at the time of his employment. The alleged negligence of the defendant on which a recovery was sought and submitted to the jury was in ordering plaintiff to work in a known place of danger without warning or caution, knowing his inexperience in such matters, and in failing to warn him of the dangers peculiar to the employment or instruct him how to avoid such dangers and protect himself from injury. The defendant denies all allegations of negligence on its part, says the plaintiff was himself guilty of negligence contributing to his own injury, and that he assumed the risk of injuries upon entering said employment.

I. This case has already been once before this court when a new trial was ordered on account of error in the introduction of testimony. *Vohs v. A. E. Shorthill Co.*, 124 Iowa, 471. On that appeal the question whether the facts shown were such as to justify a finding that the work was of a character to expose plaintiff to peculiar dangers, which, as an inexperienced workman, he could not reasonably have recognized and appreciated, thereby casting upon his employer the duty to warn and instruct him in reference thereto, was ruled by us against the appellant's contention and in the absence of any material change in the issues or testimony that decision must be regarded as the law of the case.

It is claimed that the evidence on the last trial does present a somewhat different case in that on the former trial there was testimony tending to show that the general

1. MASTER AND SERVANT: negligence of master: duty to warn.

manager and foreman of the appellant's shops had express knowledge of the peculiar dangers attending work of this kind, while the present record discloses no such showing. The duty to warn and instruct an inexperienced employé, the nature of whose work

exposes him to peculiar or obscure dangers, which, as a person of ordinary intelligence and prudence, he cannot be held to discover and guard against, is one of positive obligation upon the master, and he cannot escape such obligation upon the plea that he was himself ignorant of such danger. The law will hold him to have known that which the exercise of reasonable care and caution would have brought to his attention. This is especially true as to those latent dangers which experience has shown to attend or surround any particular line of work or employment. The manufacturer who establishes workshops, and goes into the labor market for employés, impliedly represents that he will perform all the obligations which the law imposes on the master in his relation with his servants, and among these is the obligation to instruct and warn the young or the inexperienced servant concerning dangers, not obvious to ordinary inspection, to which the nature of the work to be done will expose him. *Wilder v. Cereal Co.,* 130 Iowa, 263; *Norfolk B. S. Co. v. Hight,* 56 Neb. 162 (76 N. W. 566); *Anderson v. Morrison,* 22 Minn. 274; *U. P. R. R. Co. v. Fort,* 17 Wall. (U. S.) 553 (21 L. Ed. 739); *Ingerman v. Moore,* 90 Cal. 410 (27 Pac. 306, 25 Am. St. Rep. 138); *Jones v. Florence Min. Co.,* 66 Wis. 277 (28 N. W. 207, 57 Am. Rep. 269), and cases cited in 20 Am. & Eng. Encyc. Law (2d Ed.) 97, note 6.

This is not a case where the latent danger was not naturally incident to the employment; nor did it arise from the fault or negligence of third persons. In all such cases it is obviously just that the master should not be held liable until the danger has been brought to his attention or until in the exercise of reasonable care and oversight of the business he ought to have discovered it. The danger in the present instance, so far as appears, did not arise from any defect in the machinery or tools employed, but was inherent in the work of cutting hard steel. The testimony was abundant that the flying of flakes or splinters of steel

in such operations is well known to experienced workmen, and that the fragments are sent with such force and such swiftness as to be a source of danger from which the workmen are wont to protect their eyes by wearing a visor of some kind, and we find no error in the submission of this feature of the case to the jury.

II. Dr. Getz, the physician who treated the plaintiff's injury, being examined as a witness in his behalf, was asked, among other things: "State whether or not the eye was likely to become diseased on account of the condition it was left in by the injury, at any time while it remains in the socket?" An objection that the question was "incompetent, immaterial, and irrelevant, not a hypothetical question or founded on facts" was overruled, and the witness answered, "Yes, it might become diseased; more apt to than the well eye would be. That is true of injured parts generally." Counsel insists that this ruling is in violation of the well-settled rule which excludes medical testimony of merely possible or speculative results of the present condition of an injured party. The rule, as generally applied, may be conceded to be as claimed by the appellant, but we are clear that the question asked this witness was not open to the objection made to it. It is too well settled to require citation of authorities that where an injury negligently occasioned is permanent or, if not permanent, recovery is not complete at the time of the trial, the injured party is entitled to damages, already accrued, and such other damages, also, as the evidence shows him reasonably certain to sustain in the future. As bearing upon that point it is certainly competent for a physician who has examined and treated him and knows his condition to express an expert opinion as to future consequences reasonably to be expected to follow the injury. Most of the authorities cited by appellant in this connection concede the competency of such evidence. Bradner on Evidence, 298; *Strohm v. R. R. Co.,* 96 N. Y. 305. Dr. Getz was not asked

*2. EXPERT EVIDENCE.*

to state results which were merely possible but whether a given result was " likely; " i. e., probable, or reasonably to be expected. Webster's International Dictionary, and Century Dictionary. This, we think, was competent within the rule.

It must also be remembered that this witness was testifying from his personal examination, knowledge, and treatment of the plaintiff's injury, and there was no occasion for propounding hypothetical questions or to assume or state any especial fact or series of facts as a foundation for the inquiry to which answer was sought.

Another medical witness, Dr. Singleton, testifying on behalf of the defendant, having said that there was " no communication or sympathetic connection between the injured eye and the well eye," so far as he could 3. Same: cross discover, and that in his judgment " there was examination. not likely to be any loss of vision in the right eye unless something unknown should start up." He was asked on cross-examination " now the liability exists and will continue to exist of this plaintiff being compelled to have that eye removed sometime to prevent communicating disease to the other eye, is that not true ? " Over appellant's objection the witness answered, " Well, that liability exists. There is nothing in the condition of the sightless eye now that from a medical standpoint would necessitate removing it." We find no error in this ruling. It may be conceded that the question and answer would have been objectionable as a matter of direct evidence in plaintiff's behalf, but the doctor having expressed an opinion negativing the likelihood, if not the possibility of further injurious results to the plaintiff in the future, we think it was competent on cross-examination to test that opinion by asking him whether the deleterious effects mentioned might not yet appear. In the cross-examination of witnesses, and especially of expert witnesses, it is ordinarily allowable for counsel to cover a much broader range of inquiry than would be permitted in the examina-

tion of a friendly witness in chief, and the limit was not exceeded in this instance.

We cannot extend this opinion to discuss other objections to evidence. We have examined the record as to each point made in this respect, and think the exceptions cannot be sustained.

III. Appellant, proceeding upon the theory that its answer pleads assumption of risk as an affirmative defense, complains that this plea was ignored by the court in stating to the jury the things necessary to be established to entitle the plaintiff to recover. In support of the point thus made, the cases of *Quinn v. R. R. Co.,* 107 Iowa, 710, and *Christy v. R. R. Co.,* 126 Iowa, 428, are cited. But these authorities are not applicable. There is in the answer no plea of assumption of risk under the rule of the Quinn Case. This term as used in the books is applied to two very different conditions or states of fact. One has reference to the risks naturally incident to work which the servant undertakes to do, and the other has reference to risks or dangers arising from the employer's negligence, the peril of which the servant assumes when he remains in the employment after he knows or as a reasonably prudent person ought to know the dangers to which he is thus exposed. The assumption of risk first mentioned need not be pleaded, and, if pleaded, it neither adds to nor detracts from the issues as they would have stood upon a simple denial of the petition. The assumption of a risk of the latter kind is an affirmative defense, and must be pleaded. As we have already said, it is not here pleaded. The allegation that " plaintiff assumed the risk of injuries upon entering said employment " is simply the statement of the legal proposition as to risks incident to the employment. Indeed if a proper affirmative plea of assumption of risk of negligence had been tendered we think there is no evidence in the record to justify its submission to the jury. This subject has been quite fully discussed by us in a very recent case, and we

4. ASSUMPTION OF RISK: pleading: submission of issue.

think it unnecessary to repeat what was there said.  See
*Martin, Administrator, v. Des Moines Edison Light Company*, 131 Iowa, ——.

IV. What we have already said in reference to the
record and the points of law argued renders it unnecessary
for us to consider many of the objections to the court's charge
to the jury.  Nor do we stop to consider or decide whether the foreman, Johnson, was, as
foreman, the vice principal of the defendant.  It is conceded
that plaintiff was employed by the general manager who had
authority so to do, and that the general manager placed him
under the charge and direction of the foreman by whose order he was put upon the work in which he was injured.  As
we have before said the duty to warn and instruct, if it exists
at all, is the duty of the master.  He cannot delegate it to
another.  If he does delegate or intrust it to another that
person, no matter how humble his position in the organization of the business, becomes, and is so far as this duty is
concerned the *alter ego* of the master and his negligence
therein is the master's negligence.  A corporation can act
only through officers, agents, or servants and the neglect of
him to whom the performance of its obligation is committed
is its neglect.  It is very possible that some of the instructions given the jury on this and kindred points were
unnecessary, but if any error was committed therein it was
not of a nature of which the appellant can complain.

5. Negligence.

V. It is also contended that the verdict is not supported
by the evidence, and that the verdict for damages, $2,000, is
excessive.  As to the sufficiency of the evidence we need add
nothing to what has already been said.  On the former appeal, upon substantially the same evidence, it was held there
was no error in the order of the trial court overruling a
motion to direct a verdict in appellant's favor.  There is
nothing in the present record requiring a different conclusion.

As to the amount of the verdict this court interferes

with the finding of the jury upon questions of damage with reluctance. This is particularly true in recoveries for personal injury where the court does not and cannot attempt to set up any exact or invariable rule for estimating compensation for pain, suffering, disfigurement, and loss of earning capacity, past, present, and future. In the very nature of things, this must be left to the fairness, intelligence, and conscience of the jury, subject only to the supervisory power of the court to set aside or reduce a verdict which is clearly and manifestly excessive. The loss of an eye is one of a very serious nature. The plaintiff must necessarily have suffered much pain and inconvenience therefrom. That inconvenience, if not pain, will be his lifelong accompaniment. His physician's bill for treatment of the injury was more than $100. His loss must necessarily interfere with his efficiency in many kinds of labor which might otherwise be open to him, and altogether we are not prepared to say that a verdict of $2,000 is so palpably excessive or unreasonable that we ought to disturb it. Other questions have been argued, but we think it unnecessary to go into their extended consideration.

6. VERDICT: not excessive.

We find no reversible error in the record, and the judgment of the district court is *affirmed*.