WILLIAM BELEVICZE *vs.* THE PLATT BROTHERS AND COMPANY.

Third Judicial District, Bridgeport, April Term, 1911.

HALL, C. J., PRENTICE, THAYER, RORABACK and WHEELER, Js.

The liability of a master for an injury to a servant depends primarily upon whether or not the injury was caused by the former's negligence, that is, by a breach of the legal duty owed the servant.

A master who puts a young and inexperienced hand at work on a machine, the operation of which is attended with danger and requires considerable dexterity, practice and skill, is bound to give him such warning and instruction as is reasonable under the circumstances known to the master, or which should have been known to him, to the end that the servant may appreciate the risk and comprehend the instructions, and may be enabled, with the exercise of due care upon his part, to do his work without hazards other than those arising from the negligence of the master or from the ordinary risks of the employment.

In the present case the plaintiff, a Lithuanian, whose knowledge of English was very limited and who was inexperienced in the use of machinery, was set at work by the defendant, a few days after he had been employed, on a rapidly revolving blocking machine used to wind up strips of metal after they had been pressed out between heavy cylinders. The only instruction he received was limited to ten minutes, and was given by a boy of seventeen who spoke in a language the plaintiff did not understand, and who attempted, by motions, to show the plaintiff how to operate the machine by having him coil one strip of metal and observing how he did it. The plaintiff was not warned of the danger of getting his arm caught in the revolving block, nor shown the proper way in which to avoid such danger, and on the following day, while in the exercise of due care, his hand was caught between the layers of metal which he was trying to wind and was drawn about the revolving block and crushed, resulting in the loss of his arm. *Held* that upon these facts, which the evidence offered by the plaintiff tended to prove, the jury were justified in finding not only that the defendant was guilty of negligence in failing to properly warn and instruct the plaintiff, but that such negligence was the proximate cause of the plaintiff's injury.

The instructions which the master is bound to give must be graduated to the age, inexperience and incapacity of the servant, and should point out the risk and its nature and extent.

The servant takes upon himself all risks of the service which do not arise from a violation of the master's legal duty.

A master is liable only for such defects as he knew or ought to have known of.

A risk due to the master's misconduct or breach of duty is known as an extraordinary risk in distinction from the usual or ordinary risks of the service.

When the servant knows, or ought to have known, the danger, appreciates the risk, and voluntarily encounters it by continuing in the work without promise of remedy, his conduct prevents his taking advantage of the master's negligence, even though the servant has not been warned or instructed. This result is reached, not upon the ground that the servant has assumed the risk by his contract of employment, but upon the principle of waiver or of *volenti non fit injuria.*

The term "assumption of risk" is not properly applied to those risks which inhere in the contract of service. As applied to "extraordinary risks" it means that the servant has by his own act or volition waived the effects of the master's violation of his legal duty.

The failure of the master to warn the servant of latent dangers which were known to the former but of which the latter neither knew nor was bound to know, constitutes negligence upon the part of the master.

The question of what warning or instructions should have been given in a particular case depends upon circumstances, and is thus a matter for the determination of the jury, whose conclusion is ordinarily not reviewable.

Conclusions drawn by a jury from the consideration of a variety of circumstances are essentially conclusions of fact, and unless clearly unreasonable are not reviewable on appeal.

Argued April 13th—decided November 1st, 1911.

ACTION to recover damages for personal injuries alleged to have been caused by the defendant's negligence, brought to the Superior Court in New Haven County and tried to the jury before *Ralph Wheeler, J.;* verdict and judgment for the plaintiff for $2,500, and appeal by the defendant. *No error.*

*Terrence F. Carmody,* for the appellant (defendant).

*William E. Thoms,* with whom was *Francis P. Guilfoile,* for the appellee (plaintiff).

WHEELER, J.   The jury may reasonably have found from the evidence submitted by the plaintiff these facts: The plaintiff was a Lithuanian, and when injured in the defendant's factory was eighteen years and five months old, and had lived in this country three years.   His knowledge of English was limited and confined to a few simple words.   He entered defendant's employ and had worked nine days when he was put at work on a blocking machine of a type that was not dangerous in its operation, and he had worked on this machine two days when, at four o'clock in the afternoon, he was put to work on another type of blocking machine which was dangerous.   The only instruction he received was for about ten minutes from a boy of seventeen, who spoke in a language he did not understand, and by motions attempted to teach him to operate the machine by having him coil one strip of metal, and by observing the plaintiff doing the work.   The plaintiff was not warned of the danger of the work he was to do, nor told of the liability of his arm getting caught, nor cautioned as to the proper way in which to do the work to avoid this liability.

In order to have given the plaintiff the instruction, facility and practice to operate this machine with reasonable safety to himself, a skillful operative should have instructed him in a language he understood and have shown him how to operate it, and watched him in trying to operate it, and should have continued to instruct and watch him for a considerable time so that in case his hand got caught before he had acquired manual dexterity in its operation the machine might be instantly stopped by the watcher, as it was impossible for the operative to have stopped the machine after being caught.

The work the plaintiff did on this machine appears simple: in reality it is dangerous and requires consider-

able dexterity, practice and skill. It was this. A strip of metal passes between very heavy revolving steel cylinders and emerges in a thin strip a few inches wide, which is called a bar. This bar is then wound upon a revolving cylinder or spool of quite large diameter, called a winding block, or a blocking machine, which revolves about fifty-two revolutions to the minute. The plaintiff was required to take hold of the bar with his left hand as it came from the revolving steel cylinders and place it upon and around the revolving cylinder while it was in motion and hold it upon the cylinder until enough of the bar had come in contact with it so that the resulting friction would wind the bar upon it. While the bar was being placed upon and around the revolving block, if the hand should be allowed to remain upon the metal a fraction of a second too long it is liable to be caught between the layers of the bar as it is being wound upon the block and serious injury may result. The danger of injury in this way was not one the plaintiff knew of or was warned concerning.

The plaintiff had worked on this machine for five and three quarters hours and coiled twenty strips of the metal when on the second day, without negligence on his part, his hand was caught between the layers of the metal which he was trying to place upon the revolving cylinder, carrying him over the machine, and as a result he lost his arm.

The defendant knew, or ought to have known, the age of the plaintiff, his lack of experience and ignorance of our language, and knew that he did not understand the operation of the machine, nor have sufficient instruction and practice to have been reasonably capable of running it. The plaintiff did not comprehend the danger nor appreciate the risk, and the defendant knew or ought to have known this.

The appellant bases its appeal upon the trial court's

refusal to direct a verdict and its motion for a new trial upon the same ground, viz: that there was no legal evidence from which the jury could either have legally found the defendant negligent, or that the plaintiff was ignorant of the alleged danger, and did not have equal means with the defendant of knowing, appreciating and understanding the danger, since the injuries of the plaintiff were caused by a risk which was one of the ordinary risks of his employment, and if not that, but an extraordinary one, it had been assumed by him.

The liability of a master for an injury to a servant primarily depends upon whether or not the injury was caused by his negligence, and is determined by ascertaining whether there has been on his part a breach of duty owed the servant.

The duty of the master in this case was to use reasonable care to provide a place and a machine which were reasonably safe for the plaintiff for his work. This duty was a continuing one, and hence included that of maintenance which necessarily involved that of reasonable inspection and care (*Rincicotti* v. *O'Brien Contracting Co.*, 77 Conn. 617, 620, 60 Atl. 115), and it likewise included the giving of such instruction and warning to the plaintiff as would be reasonable under the circumstances, as these were known or ought to have been known to the master, so as to enable the servant to appreciate the risk and comprehend the instructions, and with proper care on his part to do his work without peril other than from the subsequent negligence of the defendant or from the ordinary risks of the work he was to do. *Pelow* v. *Oil Well Supply Co.*, 194 N. Y. 64, 68, 86 N. E. 812; *Marklewitz* v. *Olds Motor Works*, 152 Mich. 113, 120, 115 N. W. 999.

The instruction must be graduated to the age, inexperience and incapacity of the servant, and should

point out the risk and its nature and extent.  4 Thompson on Negligence, §§ 4106, 4107.

. All the risk of the service not in violation of the master's legal duty, the servant by his contract of employment takes upon himself.  For such risk of service the master incurs no liability, not because the servant has assumed the risk but because the master owes no duty in reference to it.

Reasonable or due care in the performance of the master's duty does not require the master to insure the safety of place, instrumentalities or servants; hence he is not liable except for defects he knew or ought to have known of.

When subsequent to the beginning of employment a servant is injured through the failure of the master to perform his duty towards him the master is prima facie liable.

In the terminology of the law this risk, due to the master's misconduct, comes within what is called an extraordinary risk as distinguished from the ordinary risk of service.  "As applied to the risk of a servant in his employment, it becomes transformed from ordinary into extraordinary whenever, among other conditions, the master's negligence . . . contributes an added hazard to the situation in which the servant is placed."  *Baer* v. *Baird Machine Co.*, 84 Conn. 269, 273, 79 Atl. 673.

When the servant knows, or ought to have known, the danger, and even though no instruction has been given, appreciates the risk and voluntarily encounters it by continuing in the work without promise of remedy, his conduct prevents his taking advantage of the master's negligence.  *Elie* v. *Cowles & Co.*, 82 Conn. 236, 73 Atl. 258; *American Sheet & Tin Plate Co.* v. *Urbanski*, 162 Fed. Rep. 91, 96.  This is so, not because the servant has assumed the risk through his contract of

employment, but because his voluntary continuance in service with knowledge of the danger and appreciation of the risk created by the defendant's breach of duty prevents him from taking advantage of the defendant's breach. *Volenti non fit injuria.* Lord Esher in *Yarmouth* v. *France,* (1887) 19 Q. B. D. 647, 652; *Rigsby* v. *Oil Well Supply Co.,* 115 Mo. App. 297, 307, 91 S. W. 460; *Worden* v. *Gore-Meenan Co.,* 83 Conn. 642, 78 Atl. 422. By his own voluntary act he has waived his right to secure compensation for injuries suffered through the defendant's breach of duty.

The books use the term "assumption of risk" as applicable to either the "ordinary risk" or the "extraordinary risk." "Assumption of risk" is not properly applicable to "ordinary risk." As applied to the ordinary risk assumption of risk can mean no more than that the risk inhered in the contract of service; as applied to the extraordinary risk it means that the servant has by his own act of volition waived the effects of the master's violation of his legal duty. *Martin* v. *Light Co.,* 131 Ia. 724, 735, 106 N. W. 359; *Vohs* v. *Shorthill & Co.,* 130 Ia. 538, 544, 107 N. W. 417; *Duffey* v. *Consolidated B. C. Co.,* 147 Ia. 225, 228, 124 N. W. 609, 610; note to *Scheurer* v. *Banner Rubber Co.,* 28 L. R. A. (N. S.) 1207, 1216 (227 Mo. 347, 126 N. W. 1037); *Worden* v. *Gore-Meenan Co.,* 83 Conn. 642, 78 Atl. 422.

Dangers, though latent, may be known to the master, and if so, the duty is placed on him of warning the servant who neither knows nor ought to know of these, and his failure to do so is negligence, recovery for which is based not upon the existence of the danger but upon his failure to warn. See the extremely valuable discussion of Assumption of Risk in Note to 28 L. R. A. (N. S.) 1216.

The grounds upon which the appellant rests its motions are, that the danger through which the injuries

to the plaintiff arose was one within the scope of his contract of service, and if not such but an extraordinary one, it was one which the plaintiff knew and voluntarily encountered.

If the evidence supported either conclusion the verdict could not stand.

The verdict of the jury under the allegations of the amended complaint and the facts in evidence, must have been based upon a finding that the defendant was negligent in the manner described, and that that was the proximate cause of his injuries to which he did not materially contribute. That negligence consisted in putting the plaintiff at work upon a machine which it knew to be dangerous and liable to injure him in the manner it did, without warning him of the danger and properly instructing him in its operation. Likewise the verdict imports that the jury found that the risk which was the proximate cause of the injury to the plaintiff was not an ordinary risk of the service which inhered in his employment, but a risk arising through a breach of the master's duty, either in failing to warn and instruct when having full knowledge, or otherwise. Otherwise under proper instructions, and no complaint is made of these, a different conclusion must have resulted. Likewise the verdict imports that the jury found that the plaintiff did not know and appreciate the risk in the operation of the machine and voluntarily encounter it.

Unless these conclusions were so unreasonable that the jury ought not on the evidence to have reached them, the verdict should stand.

The evidence before the jury was conflicting, but there was evidence from which they might reasonably have found either a breach by the defendant of its primary duty to the plaintiff, which he did not know of, or an extraordinary risk which the plaintiff did not assume, and hence there was sufficient evidence to sup-

port the verdict. *Bradbury* v. *South Norwalk*, 80 Conn. 298, 300, 68 Atl. 321. What warning or what instructions should have been given depended, as they do in every case, upon the circumstances, and these are for the jury, and ordinarily not reviewable. *Clemens* v. *Gem Fibre Package Co.*, 153 Mich. 495, 509, 117 N. W. 187.

As all of the conclusions which the verdict imports, together with that of contributory negligence, which is not seriously pressed, depended upon many circumstances, they were essentially questions of fact for the jury, and the verdict based thereon cannot in the proper application of our rule of law be set aside and a new trial granted. It also follows that the court was right in refusing to direct a verdict.

There is no error.

In this opinion the other judges concurred.