EDWARD TENNEY *vs.* THE BAIRD MACHINE COMPANY.

Third Judicial District, New Haven, January Term, 1913.
PRENTICE, THAYER, RORABACK, WHEELER and GAGER, JS.

In an action by a servant against his master for personal injuries, the
plaintiff's evidence tended to show that he with two other men,
under the direction of the defendant's foreman and in the presence
of its superintendent, was engaged in moving a heavy machine
which rested upon two sets of superimposed skids; that it became
necessary to take out the temporary set; that the foreman directed
the plaintiff to stand on one side of the machine and steady it with
his hand, while the other men raised it at different points with
crow-bars and knocked out the skids with sledge-hammers; that
on the side where the plaintiff was stationed were cams and shafting
which so affected its center of gravity that the machine was liable
to and did topple over in that direction when tilted, and injured
the plaintiff; and that the work might have been safely done by
the use of chain-falls. *Held:*—

1. That the jury would have been justified in finding from these facts
that the injuries resulted from the defendant's negligence in failing
to employ a proper method and in using tools unsuited to the work.
2. That the negligent conduct of the work in the presence and under the
observation of an officer and superintendent of the employing
corporation, made the negligence that of the master rather than
that of the plaintiff's fellow-servants.

Chain-falls, by the use of which the work could have been safely per-
formed, had been supplied by the defendant and were available,
but they were kept in another part of the factory, and it was left
to the foreman to get them when required. *Held:*—

1. That this did not show a full performance by the master of its duty
to provide proper tools, since the matter of getting a set of chain-

Tenney v. Baird Machine Co.

falls or other suitable lifting apparatus for use on this occasion was a part of its duty.

2. That to the foreman was delegated the performance of this part of the master's duty.

The ordinary risk incident to a particular employment becomes an extraordinary one when the negligence of the master, as such, contributes an added hazard to the situation in which the servant is placed.

Such risks are not assumed by a servant unless he has, or ought to have, knowledge and comprehension of the perils to which he is exposed, and, possessed of that, continues of his own volition in the work which subjects him to them.

An employee will not be held to have assumed the risk of an employment merely by reason of his knowledge of its generally dangerous character, when it appears that he was ignorant of a peril newly-introduced into the situation which materially increased the danger.

The comprehension of risk, entailing upon a servant liability for consequences to him through continuing in his employment, involves an appreciation of the character and extent of it which furnishes him with an adequate basis for voluntary decision as to its assumption.

Whether the plaintiff had such knowledge and comprehension of the danger confronting him when he took the position in which he met his mishap, was a question of fact to be determined by the jury, unless the evidence was such that after weighing all the elements entering into the matter, no reasonable conclusion could have been reached except that he did so know and comprehend the extent of the peril.

In the present case there was evidence as to the plaintiff's degree of intelligence, the extent of his knowledge of mechanics and of this particular operation, his opportunities for observation and his capacity for judgment, including his appearance upon the witness-stand and the absence of any warning or instruction as to the peril. *Held* that from this evidence the jury might reasonably have found that the plaintiff did not assume the risk, and that, therefore, it was error for the trial court to nonsuit him upon the ground that he did assume it.

The case of *Kelly* v. *New Haven Steamboat Co.*, 74 Conn. 343, distinguished.

Argued January 30th—decided June 13th, 1913.

ACTION to recover damages for personal injuries alleged to have been caused by the defendant's negligence, brought to the Superior Court in New Haven

County where the plaintiff was nonsuited in a trial to the jury before *Williams, J.*, from which judgment he appealed. *Error and new trial ordered.*

*James N. Lynch*, for the appellant (plaintiff).

*E. Henry Hyde*, for the appellee (defendant).

PRENTICE, C. J. This action, claiming damages for personal injuries, by a servant against his master, has been before us on a former occasion. 85 Conn. 333, 82 Atl. 639. The pleadings remain as they then were. The complaint charges negligence on the part of the defendant "in not providing the plaintiff with reasonably safe tools and appliances, in not providing him with a reasonably safe place in which to work, and in not giving him instruction as to the danger surrounding his work." The answer denies these charges, and asserts (1) that whatever negligence may have contributed to the plaintiff's hurt was that of his fellow-servants, and (2) that he assumed the risk incidental to the work in which he was engaged when injured.

Upon the former trial the two allegations of negligence first named were withdrawn from the consideration of the jury, and the last named only submitted to them. The reason assigned for this withdrawal was that whatever short-coming the evidence disclosed in the matter of appliances or place was due to the failure to use appliances, to wit, chain-falls, which the defendant had provided. A verdict for the plaintiff having been returned, we decided that it was unwarranted, since the evidence disclosed an assumption by the plaintiff of the risk.

The jury, upon the present trial, might reasonably have found the following facts, to all of which the plaintiff's witnesses testified:—

The defendant was a manufacturer of machinery, conducting its business in a shop of considerable size, and having two stories with five or six rooms on each floor. One Warner was its secretary and superintendent. One McGough was its millwright and foreman in charge of moving and shipping the product of the shop.

The plaintiff was an ordinary laborer of average intelligence, but unskilled in mechanics or mechanical operations. He was hired by Warner, and had been in the employ of the company about a year. Some considerable portion of this time he had worked with and under the direction of McGough in moving machines, and at the time of his injury was subject to the call of McGough for that purpose when wanted. In the course of his service under McGough he had frequently assisted in moving machines, and upon one occasion, shortly before the accident, had so assisted in moving the particular machine, hereafter referred to, from the lower to the upper story of the shop. These operations in which he had been engaged had sometimes been conducted by pushing the machine along the floor by means of iron bars, and at other times by the use of chain-falls, by means of which the machine was lifted from the floor and carried along by appropriate apparatus.

On the day of the accident the plaintiff and two other men had been directed by McGough to assist him in taking a press to the shipping-room, to weigh it, and prepare it for shipment. It was then on the second floor, and rested upon skids designed for temporary shop use. These skids were made of $3 \times 4$ joists, and extended from side to side of the press. The press was about six feet long, four feet wide, and four feet high, and weighed about three thousand pounds. Upon one side, near the top, were cams and shafting which affected

its center of gravity, so that it would more easily topple over in that direction when tilted.

The press was successfully moved along the floor, carried down the elevator, taken to the shipping-room, weighed, and taken from the scales for preparation for shipment. This involved the substitution of skids better adapted for that purpose in place of the temporary ones. Those provided were sawed from $3 \times 4$ joists, and of such length as to extend lengthwise of the press. The process of substitution adopted and ordered by McGough was to raise the press by iron bars in such a way that the new skids could be placed in position under the temporary ones. This was successfully accomplished, and the press then rested upon two sets of superimposed skids.

The next step was to remove the temporary skids. The method ordered by McGough and undertaken was that of lifting different parts of the press at a time by the use of two crowbars and knocking out the temporary skids with a sledge-hammer. McGough directed the plaintiff to stand on that side of the press on which were the cams, and steady it with his hand as it should be lifted. McGough and another man, acting under his orders, using two bars, then proceeded to lift one side, or end, of the press, when it tipped over on the plaintiff. As it fell he jumped back to get out of the way, still holding on to the press to steady it, when he tripped over an attachment of the machine called a "wire-straightener," which, separated from it, had, after the weighing and without the plaintiff's knowledge been placed upon the floor near-by by somebody, and the press fell upon him causing his injuries.

The method employed in substituting the skids was an improper one, and the tools used unsuited to the work. Due care required the use of other appliances, as for instance chain-falls, and the lifting of the machine

by means of them. This was known to the defendant. Had they been used the accident would not have occurred.

The defendant had five sets of chain-falls of different lifting capacities which were kept in different portions of the shop, but neither set was in the shipping-room. These falls were obtained and used as the foreman from time to time ordered.

The plaintiff had never before seen crowbars used to lift a machine up onto skids or to lower one from one set of skids to another placed beneath them. He was familiar with the moving of heavy machinery by working it along the floor by means of bars, and by lifting it and moving it by the use of chain-falls, but the operation in which he was engaged when hurt was a new one to him.

Warner was standing by when the shifting of the skids was in progress and observed the methods and appliances employed, as also the part assigned to the plaintiff in steadying the press. The plaintiff was given no warning of danger.

It is clear that the jury would have been justified in finding that the plaintiff received his injuries as the result of negligence on the part of the defendant, or of its employees, in that crowbars and a sledge-hammer were used instead of chain-falls or other suitable lifting appliance. We do not understand that the defendant calls this in question, but it urges that recovery cannot be had for two reasons disclosed by the evidence, to wit: (1) that whatever negligence there was was not its, or imputable to it, but that of fellow-servants of the plaintiff; and (2) that the plaintiff assumed the risk involved in the work he was doing.

The first claim is untenable. In the first place, Warner, the company's officer and superintendent, was observing the use by his foreman of the improper

method and means employed and of the failure by him to employ the proper method and means. In the second place, the defendant's duty, as master, in respect to the provision of tools, had not been performed. Its performance was necessary. *McElligott* v. *Randolph*, 61 Conn. 157, 162, 22 Atl. 1094. Performance involved the provision of chain-falls or other suitable lifting apparatus. The having of chain-falls somewhere in the shop where they were obtainable was not such a provision of them as the law requires. They were not at hand convenient for use, as in the case of the fender in *Kelly* v. *New Haven Steamboat Co.*, 74 Conn. 343, 50 Atl. 871. They were obtainable and could have been got, but that was not enough to fill out the sum of the master's duty. The matter of getting a set from the place where one was kept was left to McGough, the foreman, and in respect to that matter, which was involved in the provision of them for use upon this occasion, he was delegated with the performance of the master's duty.

The risk which the plaintiff was called upon to face at the time he was injured was not the ordinary one incident to his employment. The ordinary risk having been enhanced by the defendant's misconduct, which imported into the situation a factor of peril resulting from its negligence which did not exist when the employment began, it was an extraordinary risk as that term is employed in the law. "As applied to the risk of a servant in his employment, it becomes transformed from ordinary into extraordinary whenever, among other conditions, the master's negligence in respect to his duty as master contributes an added hazard to the situation in which the servant is placed." *Baer* v. *Baird Machine Co.*, 84 Conn. 269, 273, 79 Atl. 673; *Girard* v. *Grosvenordale Co.*, 82 Conn. 271, 275, 73 Atl. 747; *Belevicze* v. *Platt Bros. & Co.*, 84 Conn. 632, 637, 81 Atl. 339,

Such risks are not assumed by a servant unless he has, or ought to have, knowledge and comprehension of the peril to which he is exposed, and, having such knowledge and comprehension, continues of his own volition in the work which subjects him to that peril. *Baer* v. *Baird Machine Co.*, 84 Conn. 269, 274, 79 Atl. 673; *Belevicze* v. *Platt Bros. & Co.*, 84 Conn. 632, 637, 81 Atl. 339.

The plaintiff testified that he knew that the moving of large machines was dangerous work. As a man of ordinary intelligence and with his experience, that knowledge might well have been imputed to him by a jury had it not been frankly confessed. But that is a very different thing from an admission or conclusion that he comprehended the character and extent of the danger which he was called upon to face when McGough ordered him to steady the press. There were perils peculiar to the work undertaken and to the method employed, which increased the ordinary element of danger, and there was a factor in the situation arising from the location of the cams which added an element of appreciable importance, which he says he did not understand. Did he comprehend these things and their significance as affecting his safety? If not, he did not comprehend the risk to which he was exposed. There are many degrees of danger. Knowledge of danger in one degree and knowledge of it in a higher degree are not the same thing. The comprehension of risk, entailing upon a servant liability for consequences to him through continuing in his employment, involves an appreciation of the character and extent of it which furnishes him with an adequate basis for voluntary decision as to its assumption. Any other rule would be harsh and unjust in the extreme.

In *Baer* v. *Baird Machine Co.*, 84 Conn. 269, 274, 79 Atl. 673, in treating of this subject we said: "The

inquiry as to the plaintiff's knowledge and comprehension of the risk was one which under the circumstances of the case involved a variety of considerations. Its answer would depend upon the conclusion to be drawn from a variety of circumstances disclosed in the evidence, including his age, his intelligence, his experience, general and special, his familiarity with machinery, with the machine in question or similar machines, and with the equipment such as was in use, the nature and obviousness of the danger, and the extent of the information which may have been conveyed to him by others. Doubtless a jury could not, upon the evidence touching the pertinent matters, reasonably have said that the plaintiff did not know that there was an element of danger in the operation of such a machine as was his lathe, and that there was danger of some sort in the rapidly revolving screw head. But that would not be enough to impute to him a comprehension of the full scope of that danger, or of the peculiar danger which led to his injury."

The statement contained in this citation, of the elements to be weighed in that case for the determination of the plaintiff's knowledge and comprehension of his peril, is especially pertinent here. Very similar considerations are involved in a determination of the extent and character of the plaintiff's appreciation of the danger he faced when, in obedience to his foreman's command, he stepped to the side of the press to steady it as it was lifted by bars from its cob-house foundation. The evidence discloses no warning or instructions. What the plaintiff appreciated must have come from his own observation and capacity for judgment. He was an ordinary laborer said to be of average intelligence. The quality of that intelligence presumably was indicated by him in some measure upon the witness-stand. He was unskilled in mechanics and

mechanical operations. He had had a certain experience and enjoyed certain facilities for observation detailed in the testimony. Other experience and other means of observation he had not had. The extent of his knowledge and comprehension was a question of fact to be determined upon the evidence. It was, therefore, one for the jury, unless the evidence was such that upon it, after a weighing of all the various elements entering into the matter, no reasonable conclusion could have been reached save that the plaintiff knew and comprehended the character and extent of the peril he consented to face when he took the position in which he met his mishap. We think that this condition did not exist, and that the issue should have been submitted to the jury for its determination.

The court doubtless was influenced in its action in granting the nonsuit by our former decision read without knowledge of the evidence then presented. It will be found, however, that the plaintiff, upon this, the second trial, materially strengthened his case at the vital point of his lack of knowledge and comprehension of the danger which threatened him, so that what was before not an open question became one within the province of the jury to answer.

There is error, the judgment is set aside and a new trial ordered.

In this opinion the other judges concurred.