JOSEPH NOVY *vs.* THE BREAKWATER COMPANY.

* Third Judicial District, Bridgeport, October Term, 1914.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js

A servant who is put at work in a place which subjects him to the danger of being injured by sliding rock or earth, does not assume the risk, if the peril is not obvious to him, and if the master, with actual or constructive notice of the danger, fails to warn the servant or to exercise due care in making the place safe.

The plaintiff, an employee in the defendant's stone quarry, while digging in a gravelly bank, was struck and injured by a falling rock or stone. The bank rose perpendicularly for about ten feet, and then for about thirty-five feet continued to rise at an angle of forty-five degrees; and the main issue of fact in the case was whether the stone slid down from or near the top of the bank, as claimed by the plaintiff, or was dislodged from the bank directly in front of the plaintiff and only two or three feet above the point at which he was digging, as contended by the defendant. The plaintiff had a verdict, and the defendant appealed for alleged errors in the charge of the court. *Held:*—

1. That in view of the conflicting evidence and claims of the parties, it could not be said, as matter of law, that no duty rested upon the

* Transferred from second judicial district.

defendant to inspect the condition of the bank which was constantly changing, nor, on the other hand, that the danger from the stone that fell was so obvious that it was the plaintiff's duty to look out for himself.

2. That the question whether the plaintiff assumed the risk of injury depended upon what view the jury might take as to the cause of the accident and the manner of its occurrence; and was therefore properly left to them for their determination upon suitable instructions as to the respective duties of the parties in either contingency.

3. That the burden of proving that the plaintiff had voluntarily and knowingly assumed a risk arising from the defendant's negligence, as distinguished from one inhering in and incident to the contract of service, rested upon the defendant; and that the charge upon this subject, when taken as a whole, conveyed that information to the jury, though certain detached sentences, standing alone, were somewhat vague and obscure in their meaning.

4. That the accident itself, and the height and shape of the bank where the plaintiff was set at work, furnished evidence from which the jury might fairly have found negligence on the part of the defendant in not making an inspection of the top of the bank.

5. That while the plaintiff was bound to exercise ordinary care to prevent the injury, the responsibility for the condition of the sides and top of the bank, which he could not see, rested primarily upon the defendant.

It appeared that the defendant had incurred the hospital bill of $150 for the plaintiff's treatment, and that the plaintiff was not liable ' therefor. *Held* that under these circumstances an instruction to the effect that the plaintiff would not be entitled to recover, as part of his loss, any bill or bills which the defendant had paid or had assumed and would pay, was sufficiently favorable to the defendant.

Argued November 4th—decided December 21st, 1914.

ACTION to recover damages for personal injuries sustained by the plaintiff while employed in the defendant's stone quarry, which were alleged to have been caused by its negligence, brought to the Superior Court in New London County and tried to the jury before *Shumway, J.;* verdict and judgment for the plaintiff for $700, and appeal by the defendant. *No error.*

*Seymour C. Loomis,* for the appellant (defendant).

*Perry J. Hollandersky,* for the appellee (plaintiff).

RORABACK, J. It is alleged in the plaintiff's complaint that on the 9th day of November, 1912, the plaintiff was employed in the defendant's stone quarry, where he was injured by a stone falling from a bank. The cause of the injury was averred to have been the negligence of the defendant in failing to inspect the bank, or to remove any loose stones or dirt so as to prevent the same from falling upon the plaintiff or other employees while engaged in said work, or to take any other means to render the place where the plaintiff was at work a reasonably safe place in which to work.

The plaintiff offered evidence to prove, and claimed to have proven, that the place where he was put to work was immediately under a bank of a gravelly nature, upon which there was more or less stone, which bank rose for a distance of about ten feet perpendicularly and then continued to rise for a distance of thirty-five feet at an angle of about forty-five degrees; that, after the plaintiff had been working about one hour upon the morning in question, a stone fell out of the bank from somewhere above the plaintiff, striking him on the leg and severely injuring the same; that a bank of the character of soil of which this bank was composed, rising about ten feet perpendicularly and then continuing to rise for a distance of thirty-five feet at an angle of forty-five degrees, was not a safe place for men to work; that it was possible for men skilled in the business of quarrying or excavating, by proper inspection and the maintaining of proper grades, to maintain the sides of excavations so that it would be safe to work at the bottom of the same; that the plaintiff had not sufficient knowledge concerning banks and excavations to know that this was not a safe bank, and that the place where he was working was not a safe place to work, and that it was not his duty to so ascertain; and that, thinking

that the master, through his agents, the superintendent of the quarry and his immediate boss, was looking out for the safety of the bank, he believed, when he was told to work under said bank, that it was a safe place for him to work.

The defendant offered evidence tending to prove that the bank was in its natural condition, never having been disturbed by the hand of man before the work which the plaintiff and the two other men with him had done upon it; that the plaintiff was an experienced man, having worked on this same kind of work at least two months before the accident, and also before that, when he was not in the employment of the defendant; that the stone came down from a place about three feet from the level where the plaintiff was shoveling; that the part of the bank where the stone came down and injured the plaintiff was in the condition that it had been left that morning or the night before by the plaintiff or the two men working with him; that if the plaintiff had looked he could readily have seen the stone before it fell; that the defendant never had any inspector on the work for the purpose of notifying the men of the presence of stones in the bank that they were stripping; and that they were supposed to look out themselves for stones and the dangers resulting therefrom.

The defendant requested the following instructions: "There is no duty which the law imposes upon the defendant to inspect a bank which is constantly changing, but it is for you to consider the evidence as to whether or not it was the duty of the plaintiff to look out for himself and to inspect the bank as he and his fellow workmen went along with their work."

It cannot be said, under the facts and circumstances appearing in the record, that as a matter of law there was no duty upon the part of the defendant to inspect the bank, which was constantly changing, or that the

danger from the stone which fell was so obvious that it was the plaintiff's duty to look out for himself.

Another request, made by the defendant, sought from the court the following instructions: "An employee working on a bank of earth or stone assumes the risk of inherent dangers arising from the natural tendency of scale or falling of the embankment arising upon and from changing conditions in the place where he is working, brought about by the performance of the work itself by himself or his fellow workmen."

This request overlooked several important facts necessary for the jury to consider in passing upon the defendant's liability. It was not conceded that the place where the plaintiff went to work on the morning of his injury was safe. It also appears that there was conflicting testimony as to the cause of the accident. The plaintiff claimed that it was because the top of the bank was left loose, and that there were stones liable to slide down and which did slide down and injure him; while the defendant claimed and offered evidence to show that the stone which struck the plaintiff was in front and in plain sight of him, and that the work in which the plaintiff was engaged dislodged the stone which fell upon him.

In this connection the jury were instructed that if "this stone was loose and had been loose near the top of the bank, and not as claimed by the defendant that it was a stone which was loosened by the plaintiff himself four or five feet from the ground, there is in my opinion a distinction between the liability for this action in the one case and the other; I say if it was as obvious to the plaintiff as it was to the defendant himself, . . . then he cannot recover."

The court also said to the jury: The defendant "assumes that conditions were changing constantly. It is one of the facts concerning which the plaintiff and the

defendant are not entirely agreed—that if the bank were loose at the top, and had been for some time, and therefore made it a dangerous condition, as I have said, it would present an entirely different set of circumstances from that which would arise if he was picking from the bank about the height he would ordinarily pick to remove stone, and it fell upon him without his paying any attention to it. Now, this case depends greatly upon the question of how you regard the evidence as to the manner in which the accident occurred. Whether reasonable care on the part of the defendant required the defendant company to keep a continual watch, or any watch, upon the bank, or any supervision over the bank where the plaintiff was working, and whether the plaintiff knew of the condition of the bank or by exercising ordinary care ought to have known it, by using his senses—I say, whether it was his duty to know, as he might have known, that by loosening the earth over the face of the bank with his pick the earth above it would be likely to fall."

From these instructions and other portions of the charge, it is apparent that the trial court properly left this claim of the defendant to the jury to be determined as a question of fact.

Complaint is made because the jury were instructed as follows: "Now, upon the second proposition, namely, that the plaintiff assumed the risk of being injured by a stone falling from the bank—as I have already said, the burden is upon the defendant to prove it so far as this: that in case you find that defendant has violated some legal duty which may have been or was a contributing cause of the plaintiff's injury, then in that case the risk was an extraordinary one, not inhering and incident to the contract of service, which risk and danger the plaintiff knew or by exercising ordinary care should have known. The burden then is upon the de-

fendant to prove it, namely, that the plaintiff voluntarily encountered it, and thus assumed it."

These instructions, standing alone, were vague and obscure in their meaning, and, if nothing further had been said upon this subject, we might have reached the conclusion that the jury could have been misled by them as to the question of law to which they were intended to refer. But the trial judge, in a subsequent passage in his charge and at the request of the defendant upon this point, said to the jury: "An employee assumes all the ordinary risks in inherent dangers arising from the work in which he is engaged. He also assumes the extraordinary risks arising from the defendant's negligence, provided he knew or ought to have known of the danger arising therefrom."

The judge also said to the jury upon this subject: "The employee is chargeable with knowing not only what he actually knows but what he ought to have known; and this 'ought to have known' means what by reasonable care he could háve known, and his failure to do that is as much negligence as if he encountered it actually knowing, and if you find that the plaintiff knew or ought to have known of these changes in the natural conditions of the bank which he and his fellow workmen were making, and that the danger was as open and as obvious to him as it was to the defendant, then he cannot recover."

The judge also stated to the jury: "So in this case if the plaintiff did know and appreciate the dangers which were before him, if they were before him, and continued his employment without complaint, or without asking to have them removed, then the law implies an assumption on his part of that risk. This assumption of extraordinary risk or dangers created by the master is wholly dependent upon the knowledge, actual or constructive, of the servant, of the existence of the

danger, and without such knowledge upon his part there can be no assumption of the risk."

In another part of the charge the jury were instructed as follows: "But if there arises in addition to that ordinary danger what are called extraordinary risks, if then the plaintiff, Novy, in this case, knew and appreciated those extraordinary risks, such as that loose earth at the top, and loose stones at the top, would be likely to fall, if he using ordinary care could discover that, it was his duty to use his senses to discover it; and if, knowing and appreciating the danger, he failed to use his senses, and that was the cause of his injury, he cannot recover."

Thus it appears that the remarks excepted to, when read in connection with other portions of the charge upon the same subject, were so explained as to give the jury to understand that, if they reached the conclusion that the risk in question was an extraordinary one, then the burden was upon the defendant to show that the plaintiff voluntarily and knowingly encountered it, and in this way assumed the risk. When so considered, the remarks complained of were in harmony with the repeated decisions of this court. See *Baer* v. *Baird Machine Co.*, 84 Conn. 269, 273, and cases cited at the bottom of page 273 and top of page 274, 79 Atl. 673.

The accident itself, in connection with the circumstances shown in regard to the height and shape of the bank where the plaintiff was put to work, furnished evidence from which the jury might have fairly found negligence on the part of the defendant in not making an inspection of the condition of the top of the bank where the plaintiff was injured.

The question whether the plaintiff was in the exercise of due care was also a question of fact for the jury. Although he had been engaged in this kind of work for about two months, it was not his duty to examine the

top of the bank, between thirty and forty feet above
the place where he was at work.  While he was bound
to exercise ordinary care to prevent the injury, the
responsibility for the condition of the sides and top of
the bank, that he could not see, was primarily upon the
defendant.

It is the rule, followed in many cases, that a servant
put to work in a place which subjects him to the danger
of being injured by sliding rock, earth and the like,
does not assume the risk where the danger is not ob-
vious to him, and the master, with actual or construc-
tive notice of the danger, fails to warn him or to exer-
cise due care in making the place safe.  See 7 Amer. &
Eng. Ann. Cas. p. 302, note 7, and the cases cited on
pages 302 and 303.  See also *Gerardi* v. *Driscoll*, 88
Conn. 16, 89 Atl. 892; *Tenney* v. *Baird Machine Co.*, 87
Conn. 119, 87 Atl. 352; *Baer* v. *Baird Machine Co.*, 84
Conn. 269, 79 Atl. 673; *Belevicze* v. *Pratt Bros. & Co.*,
84 Conn. 632, 81 Atl. 339.

Another passage in the charge dealing with the ques-
tion of damages is also criticised by the defendant.  The
portion of the charge objected to was but a piecemeal
statement of the instruction of the court upon the
question of damages.

It appears by the record that the defendant offered
evidence to prove, and claimed to have proven, that
"the hospital bill amounting to $150 had been incurred
by the defendant and that the plaintiff was not liable
therefor."

The court, in this connection and in connection with
its instructions as to damages which the plaintiff might
recover, instructed the jury as follows: "Now, in case
you arrive at the question of damages, the rule of
damages as fixed by law is fair compensation to the
plaintiff for his injuries.  But you are to take into con-
sideration in determining what is fair compensation

his pain and suffering, the amount of time which he has lost by reason of the injuries which he incurred in his accident; and you are also to take into consideration in fixing what he has lost the amount, and reduce therefrom the amount which the defendant has paid to the plaintiff as wages since the time of the injury, and the amount also he has earned in other places as wages, and the bills, if any, which the defendant has paid or assumed and will pay. I do not think it was for our consideration to inquire into the consideration which may arise between the defendant company and this plaintiff as to the payment of this hospital bill. It appears, I think from the evidence, that the plaintiff was sent to the hospital by the defendant; that by its authority the charges for the plaintiff's care while he was in the hospital were made to the defendant. Therefore, it seems to me they are liable, and it is no question of ours what may subsequently arise in the dealing between the plaintiff and defendant in relation to this."

It is apparent that the defendant was objecting to the plaintiff's claim of a credit on account of the hospital bill because it had only been assumed and not in fact been paid by the defendant. The instructions of the court upon this subject, when taken as a whole, as they should be, were sufficiently favorable to the defendant.

The other assignments of error are such that they do not call for discussion.

There is no error.

In this opinion the other judges concurred.